LOCAL 175 OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS and Earl W. Burnette, Appellants,

v.

UNITED STATES of America, Appellee.

No. 12262.

United States Court of Appeals, Sixth Circuit.

Feb. 24, 1955.

H. G. B. King, Chattanooga, Tenn., for appellants.

Fred D. Turnage, Washington, D. C., Stanley N. Barnes, Asst. Atty. Gen., Daniel M. Friedman, Bernard M. Hollander, Wm. F. Rogers, Washington, D. C., John C. Crawford, Jr., U. S. Atty., Knoxville, Tenn., John P. Davis, Jr.,

Chattanooga, Tenn., on brief, for appellee.

Before SIMONS, Chief Judge, and MILLER and STEWART, Circuit Judges.

## PER CURIAM.

The appellants, Local 175 of the International Brotherhood of Electrical Workers, and Earl W. Burnette, its business agent, were charged in a one-count indictment with combining and conspiring with the National Electrical Contractors Association, Chattanooga Chapter, which was a corporation of electrical contractors operating within the Chattanooga, Tennessee area, a number of individual electrical contractors who were members of the contractors' association, and other individuals to restrain interstate trade and commerce in electrical equipment through suppressing and eliminating competition in the sale and installation of such equipment in the Chattanooga, Tennessee area, in violation of Section 1 of the Sherman Act. Sections 1 and 2, Title 15, U.S. Code Annotated. All of the defendants, except the appellants, filed pleas of nolo contendere. Appellants entered a plea of not guilty. Following a jury trial and a verdict of guilty, fines were imposed, from which judgments they have prosecuted this appeal.

Briefly summarizing the indictment, it alleged that over 75% of the electrical equipment sold and installed in the Chattanooga area was manufactured out of State and shipped into the Chattanooga area; that the appellant Union supplied the skilled labor which was used in the installation of more than 90% of the electrical equipment so sold and installed in the Chattanooga area; that over 75% of the electrical equipment sold and installed by electrical contractors in the Chattanooga area was sold and installed by members of the National Electrical Contractors' Association; that the value of the electrical equipment sold and installed in 1952 by electrical contractors in the Chattanooga area was over one million dollars; that a substantial quantity of electrical equipment ordered by Chattanooga electrical contractors was shipped directly from out of State manufacturers to the places of business of Chattanooga electrical contractors or to the site of its installation; that electrical contractors, including those named as defendants, were conduits through which electrical equipment produced in states other than Tennessee was sold and distributed to consumers in the Chattanooga area; and that the equipment "flows in a continuous uninterrupted stream from its points of origin in states other than Tennessee to its places of installation and use within the Chattanooga area."

The indictment further charged that the defendants entered into a continuing agreement of the following nature. Association electrical contractors who intended to submit a bid for the sale and installation of electrical equipment registered with the Association; those who so registered agreed upon and designated the low bidder on the job in question; the other members either did not submit a bid or submitted complimentary bids at higher figures; that in case of disagreement as to which member should get a particular job, the matter would be referred for decision to the Grievances Committee, composed of officers and directors of the Association, who would finally designate the member who would be the low bidder; that any association member who refused to comply with the foregoing procedure was subject to a fine; that in order to enforce compliance with the foregoing procedure, the appellant union would refuse to supply union labor for, or withdraw union labor from, or would supply only incompetent labor on, any job desired by association members, unless such job was awarded to the designated or selected member; that appellant union refused to enter into labor contracts with non-association electrical contractors in the Chattanooga area unless they agreed not to compete with the association members on jobs desired by such members; and that the appellant union would picket

any job in the Chattanooga area on which the electrical contracting work was being performed by labor not supplied by the appellant union, and would place upon its "unfair list" any awarding authority who awarded a contract for the sale and installation of electrical equipment to any electrical contractor using labor not supplied by the appellant union. The indictment further charged that during the period in question the defendants and co-conspirators "have done those things * * * they combined and conspired to do" and that the necessary effect was to unlawfully restrain and obstruct the flow of electrical equipment in interstate commerce into the Chattanooga area.

 Appellants contend that the indictment did not charge violation of the Sherman Act, but constituted merely a charge of local restraint and monopoly not reached by the Act. This contention, under a similar factual situation, was recently considered and determined by the Supreme Court adversely to appellants' contention. United States v. Employing Plasterers' Association, 347 U.S. 186, 74 S.Ct. 452, 98 L.Ed. 618; United States v. Employing Lathers Association, 347 U.S. 198, 74 S.Ct. 455, 98 L.Ed. 627. See also United States v. Women's Sportswear Manufacturers Ass'n, 336 U.S. 460, 464, 69 S.Ct. 714, 93 L.Ed. 805; Universal Milk Bottle Service v. United States, 6 Cir., 188 F.2d 959; United States v. Northeast Texas Chapter, 5 Cir., 181 F.2d 30, 33–34; Las Vegas Merchant Plumbers Ass'n v. United States, 9 Cir., 210 F.2d 732.

Appellants also contend that the Sherman Act is inapplicable to their activities because of the labor union exemption in Section 6 of the Clayton Act. Section 17, Title 15, U.S.Code Annotated. However, the Clayton Act does not exempt a labor union from the scope of the Sherman Act when the union and its officials aid and abet nonlabor groups in violating the Act. Allen Bradley Co. v. Local Union No. 3, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939; United

States v. Employing Plasterers' Association, supra.

We are also of the opinion that the Government's evidence was sufficient to take the case to the jury. Direct evidence of the agreement forming the basis of the conspiracy is not required. The conspiracy may be inferred from what was done in the light of the natural consequences flowing from such acts. Eastern States Retail Lumber Dealers' Ass'n v. United States, 234 U.S. 600, 612, 34 S.Ct. 951, 58 L.Ed. 1490; Henderson v. United States, 6 Cir., 202 F.2d 400, 403. The evidence respecting the contractors John Sliger, Joe Sliger, Curtis Electric Co., City Electric Co., Drinnon and Lewis, and Hagaman Electric Co., with the inferences favorable to the Government reasonably and justifiably to be drawn therefrom, strongly supported the Government's case. On this review we do not weigh the conflicting evidence relied upon by appellant or the credibility of the witnesses. Battjes v. United States, 6 Cir., 172 F.2d 1, 5.

The judgments are affirmed.