**UNITED STATES of America**

**v.**

**HAMILTON GLASS COMPANY and Glaziers' Local No. 27 of the Brotherhood of Painters, Decorators and Paperhangers of America.**

No. 57C432.

United States District Court
N. D. Illinois.
Sept. 30, 1957.

Earl A. Jinkinson, Bertram M. Long, Harry H. Faris, Dorothy M. Hunt, Chicago, Ill., for plaintiff.

Holmes Baldridge, Chicago, Ill., for defendant Hamilton Glass Co.

Leo Segall, Chicago, Ill., for defendant Glaziers' Local No. 27 of the Brotherhood of Painters, Decorators and Paperhangers of America.

JULIUS J. HOFFMAN, District Judge.

This is a proceeding for an injunction under Section 4 of the Sherman Act, 15 U.S.C.A. § 4. It was brought by the United States of America against two defendants Hamilton Glass Company and Glaziers' Local No. 27 of the Brotherhood of Painters, Decorators and Paperhangers of America. By its action, the plaintiff seeks to restrain alleged continuing violations of Section 1 of the Sherman Act, 15 U.S.C.A. § 1. In its complaint the plaintiff alleges that the defendant Local No. 27, along with the defendant Hamilton Glass and all other glazing contractors having union contracts with Local No. 27, have conspired in an unreasonable restraint of interstate trade and commerce in pre-glazed sash and other pre-glazed products. The alleged offense is asserted to consist of various acts by which the defendants have restrained the flow of such products into the Chicago area, thereby denying to potential purchasers the cost-savings which would result from the use of such products.

The defendants have moved to dismiss the complaint on the grounds (1) that the complaint fails to state a claim

upon which relief can be granted and (2) that this court lacks jurisdiction to entertain the suit.

### 1.

■ In considering the defendants' contention that the complaint fails to state a claim upon which relief may be granted, the court is guided by the test whether the plaintiff would be entitled to recover upon any state of facts which might be proved in support of the allegations. As this court has stated in a previous consideration of the nature of a motion to dismiss which challenges the legal sufficiency of the complaint, "If a liberal reading discloses that, at least by general statement, the plaintiff has charged every element to a recovery, summary dismissal is not justified." United States v. American Linen Supply Co., D.C.N.D.Ill.1956, 141 F.Supp. 105, 110.

■ The defendants' theory with respect to their contention that the complaint fails to state a claim upon which relief can be granted is that the complaint does not state a violation of Section 1 of the Sherman Act, inasmuch as it not only fails to allege any restraint upon commercial competition in the marketing of pre-glazed sash and other pre-glazed products, but also fails to allege intent on the part of the defendants to restrain such competition. The government's theory, on the other hand, is that the complaint does in fact allege that the offenses charged have restrained commercial competition in the marketing of the products in question. It is also the government's position that the complaint contains no allegation of intent to restrain such competition because no such allegation is required.

The complaint charges that the defendants and co-conspirators have combined in "unreasonable restraint of * * * interstate trade and commerce in pre-glazed sash and pre-glazed products." The conspiracy is alleged to consist of an agreement whereby Local No. 27, aided by the defendant Hamilton Glass Company and co-conspirators, (1) has compelled builders, general contractors, manufacturers of the products in question and others in Chicago area to pay additional sums to the union members whenever pre-glazed products are used by these persons, or to have the products reglazed on the job site, and (2) has induced such persons, by strikes, work stoppages, or threats thereof, not to make use of such products. (However, according to the complaint, whenever pre-glazed products are manufactured or supplied by the defendant Hamilton Glass Company or other co-conspirators, the agreement provides that strikes are not to be called or threatened.) The alleged practices, according to the complaint, have increased the volume of business of the defendant Hamilton Glass Company and the other co-conspirators. The general effects of the conspiracy are alleged to be the following:

(a) The use of pre-glazed sash and other pre-glazed products in the Chicago area has been greatly reduced and the volume of trade in these products in interstate commerce has been substantially decreased;

(b) The public has been denied the cost savings which result from the use of pre-glazed sash or pre-glazed products in the Chicago area.

■ A complaint charging violation of the Sherman Act, 15 U.S.C.A. §§ 1–7, 15 note is insufficient unless it alleges a restraint upon commercial competition in the marketing of goods and services. In a thorough analysis of the purposes underlying the enactment of the Sherman Act, the United States Supreme Court, in Apex Hosiery Co. v. Leader, 1940, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, stated that the Act does not condemn every combination in restraint of interstate commerce, but rather that it was directed against "restraints to free competition in business and commercial transactions which tended to restrict production, raise prices or otherwise control the market to the detriment of purchasers or consumers of goods and services, all of which had come to be regarded·

as a special form of public injury." 310 U.S. at page 493, 60 S.Ct. at page 992. The Court pointed out that it had never applied the Sherman Act in any case "unless the Court was of opinion that there was some form of restraint upon commercial competition in the marketing of goods or services." 310 U.S. at page 495, 60 S.Ct. at page 993. Further, the Court noted that, "Restraints on competition or on the course of trade in the merchandising of articles moving in interstate commerce is not enough, unless the restraint is shown to have or is intended to have an effect upon prices in the market or otherwise to deprive purchasers or consumers of the advantages which they derive from free competition." 310 U.S. at pages 500–501, 60 S.Ct. at page 996.

The complaint of the government in this case meets the requirements of the Sherman Act as set forth in the Apex case. The complaint alleges both a restraint upon commercial competition in the marketing of goods and services and an effect, produced by the restraint, upon market prices and upon other advantages which the consumer derives from free competition.

■ A restraint upon commercial competition in the marketing of goods and services can be found in the allegations of the complaint which relate to the purported practices of the defendants and co-conspirators which are said to prevent products from being used in the Chicago area that would compete with the services performed by the defendants, thereby reducing the demands in a free market for the defendants' services. The complaint does not expressly allege that the products in question would compete with the defendants' services; however, it is clear that this is the theory of the complaint. In judging its sufficiency we are to look to the four corners of the complaint, reading all its paragraphs together to determine whether the required elements of a Sherman Act offense are stated therein. United States v. Armour & Co., 10 Cir., 1943, 137 F.2d 269. In the complaint's definitions of terms [1] and in the allegations that the offenses charged have resulted in a substantial reduction of the use of pre-glazed products in the Chicago area, and in an increase in the business of the co-conspirators, it is evident that the theory of the complaint is that of a restraint upon the competition of pre-glazed products with the business of the union glazing contractors.

An effect upon market prices is charged first in the allegation that where pre-glazed products are used by builders, general contractors and others in the Chicago area, the defendants have compelled the users thereof either to pay union members for the glazing that would have been required had the products not been employed, or to have the products reglazed on the job site, and second in the allegation that the public has been denied the cost savings which result from the use of such products in the Chicago area. See United States v. New York Electrical Contractors Ass'n, D.C.S.D.N.Y.1941, 42 F.Supp. 789, where an indictment charging a union local and certain contractors' associations with refusing to install electrical equipment manufactured outside the state, and with causing such equipment to be rewired before installation, was held to satisfy the requirements of the Apex decision, where the indictment specifically alleged that the aforesaid practices added to the cost of such equipment.

It should be noted that while the defendants recognize that the complaint alleges an effect upon market prices of pre-glazed products resulting from the practices of requiring stand-by pay or

---

1. "Glazing" is defined as the installation of "flat glass or mirrors in or on wood, metal sash, frames or walls"; "glazing contractor" is defined as the business of contracting for the furnishing of "flat glass and other materials and the installation thereof in buildings"; and "pre-glazed sash" and "pre-glazed products" are defined as windows, doors and other products which "are glazed at the factories where they are made or at any place other than the job site."

reglazing when such products are used by persons in the Chicago area, the defendants maintain that such an effect upon market prices is not the type of effect prohibited by the Sherman Act. The defendants contend that whenever a wage agreement is consummated between a union and an employer, there is some effect on the price of articles involved; such effect, however, is regarded as "incidental" or "remote" with respect to any actionable restraint of trade. However, the price effect alleged in the present complaint is not the type of effect normally regarded as incidental or remote under the Sherman Act. The activities here alleged are performed by a combination of the union and employers and insulate both employer and employee from the competition of products which would replace their services or curtail the demand therefor.

The defendants further contend that United States v. Carrozzo, D.C.N.D.Ill. 1941, 37 F.Supp. 191, affirmed per curiam sub nom. United States v. International Hod Carriers & Common Laborers' Dist. Council, 1941, 313 U.S. 539, 61 S.Ct. 839, 85 L.Ed. 1508, shows that the conduct here charged does not violate the Sherman Act. That case, however, held that no acts had been alleged on the part of the defendant union which would constitute a restraint of commercial competition in the marketing of the goods in question, since the only acts charged were strikes, or threats thereof, against employers of the defendant union by which the union had compelled the employer-contractors either to discontinue the use of truck cement mixers, or employ the same number of men as would be required on the type of mixer formerly used. Thus, the Hod Carriers' case concerned union activity which increased labor costs to the employer. No effect on the market price of truck mixers was alleged; rather, the only effect alleged was an increase in the cost of cement to the ultimate purchaser. Such an effect is, in the terms of the Apex case, merely an indirect restraint upon interstate commerce, resulting from higher labor costs created by successful union activity. There was no charge in the Hod Carriers' case of combined union-employer activity to restrain the use of products in competition with the employer, with a resultant increase in the cost of the products in question to users other than the employer.

Inasmuch as the present complaint alleges a combination by the defendant union and the employer contractors to coerce third persons not to purchase products which compete with the services of the defendants, and to increase the cost of such products to purchasers when they are used, the complaint alleges a restraint upon commercial competition in the marketing of goods or services, thus satisfying the requirements of the Apex case.

With respect to the defendants' argument that the complaint is insufficient because it fails to allege that the purpose of the alleged conspiracy was to restrain commercial competition in the marketing of the goods in question, it has been held that where practices are alleged which have the effect of restraining such competition, it is not necessary to allege that such restraint was the purpose or aim of the combination. United States v. Griffith, 1948, 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236; United States v. Masonite Corp., 1942, 316 U.S. 265, 275, 62 S.Ct. 1070, 86 L.Ed. 1461; United States v. Patten, 1913, 226 U.S. 525, 33 S.Ct. 141, 57 L.Ed. 333. Although an allegation of intent may be necessary in a complaint charging that union activities against an employer are in restraint of interstate commerce, see Apex case 310 U.S. at page 511, 60 S.Ct. 982; Coronado Coal Co. v. United Mine Workers, 1925, 268 U.S. 295, 45 S.Ct. 551, 69 L.Ed. 963, it has already been shown that this is not such a case.

2.

The second major contention of the defendants is that this court lacks jurisdiction to entertain the present suit. They argue that under the provisions

of the Clayton and Norris-LaGuardia Acts, (1) combinations of labor and business groups are only subject to the provisions of the Sherman Act when the alleged combination has conspired to monopolize a market or control prices, (2) a combination of labor and business groups in violation of the Sherman Act is not present where the alleged conspiracy consists only of contracts which the union has succeeded in obtaining with its employers, and (3) under those Acts this court has no jurisdiction to grant the relief prayed for in the present complaint.

■ The Clayton and Norris-LaGuardia Acts both provide that federal courts shall not issue injunctions in any case growing out of a labor dispute, and they enumerate specific labor union activities which are not to be regarded as violating any law of the United States. Section 20 of the Clayton Act, 29 U.S.C.A. § 52; Sections 1 and 4 of the Norris-LaGuardia Act, 29 U.S.C.A. §§ 101, 104. These Acts have been interpreted to mean that labor union activities enumerated therein can not be considered violations of the Sherman Act. United States v. Hutcheson, 1941, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788. In this respect it was held in United States v. International Hod Carriers & Common Laborers' Dist. Council, supra, and United States v. American Federation of Musicians, D.C. N.D.Ill.1942, 47 F.Supp. 304, affirmed per curiam, 1943, 318 U.S. 741, 63 S.Ct. 665, 87 L.Ed. 1120, that activities on the part of labor unions directed against the use by employers of labor-saving devices were within the coverage of the Acts and thus could not be held to violate the Sherman Act.

Despite the provisions of the Clayton and Norris-LaGuardia Acts, however, labor union activities have been held to violate the Sherman Act under certain circumstances, even though the activities in question were among those enumerated in the Clayton and Norris-LaGuardia Acts. Specifically, it has been held that union activities are not immunized by those Acts when they are performed pursuant to a conspiracy of both labor and non-labor groups "to create business monopolies and to control the marketing of goods and services." Allen Bradley Co. v. Local Union No. 3, 1945, 325 U.S. 797, 808, 65 S.Ct. 1533, 1539, 89 L.Ed. 1939; followed in United States v. Employing Plasterers Ass'n, 1954, 347 U.S. 186, 74 S.Ct. 452, 98 L.Ed. 618; United Brotherhood of Carpenters v. United States, 1947, 330 U.S. 395, 67 S.Ct. 775, 91 L.Ed. 973; Local 175 of the Internat'l Brotherhood of Electrical Workers v. United States, 6 Cir., 1955, 219 F.2d 431; Las Vegas Merchant Plumbers Ass'n v. United States, 9 Cir., 1954, 210 F.2d 732; Philadelphia Record Co. v. Manufacturing Photo-Engravers Ass'n, 3 Cir., 1946, 155 F.2d 799. The theory of these cases, as enunciated in the Allen Bradley case, is that the special exceptions granted to labor unions from antitrust legislation should not be construed in such a way that business groups, by combining with labor unions, can frustrate the fundamental aims of that legislation.

The defendants contend that the Allen Bradley decision and the line of cases based thereon have no application to the present issues, while the plaintiff argues that they are controlling. The defendants maintain that the Supreme Court in the Allen Bradley case balanced the policies of the antitrust legislation, on the one hand, and those of the labor legislation, on the other hand, and determined that only where the activities in question are such that the business groups involved are able to secure complete domination of market and prices are the immunities conferred by the labor legislation inapplicable.

Cases following the Allen Bradley decision have uniformly involved violations by combinations of business and union groups in which market domination or price control has been achieved. The question is therefore presented whether those cases preclude application of the Allen Bradley doctrine to a Sherman Act violation by a like combination where the violation consists not of market domination or price control, but of re-

straints upon commercial competition in the marketing of goods or services, resulting in higher prices for the goods, and curtailing trade therein.

The Allen Bradley case and decisions following it do not preclude application of the Allen Bradley doctrine to a Sherman Act violation of the type alleged here. While the Court in that case stated that it could, with assurance, draw the line against the immunity derived from the Clayton and Norris-LaGuardia Acts at the point of market and price domination by combined union and business groups, nevertheless, this court does not regard that statement as meaning that only Sherman Act violations resulting in total market domination can be brought within the reach of that Act. The Supreme Court in Allen Bradley was faced only with the decision whether the immunity conferred by labor legislation reached the type of Sherman Act violation presented by the conspiracy there in question. The underlying theory of that case, however, appears to be as applicable to the type of violation charged in the present complaint as to that charged in Allen Bradley. That theory was stated in the following language of the Court:

"The primary objective of all the Anti-Trust legislation has been to preserve business competition and to proscribe business monopoly. It would be a surprising thing if Congress, in order to prevent a misapplication of that legislation to labor unions, had bestowed upon such unions complete and unreviewable authority to aid business groups to frustrate its primary objective." 325 U.S. at pages 809–10. 65 S.Ct. at page 1540.

The allegations of the present complaint charge a restraint upon business competition, although not a monopoly. Such a restraint, however, if permitted when caused by a combination of business and labor groups, could cause a frustration of the objectives of anti-trust legislation equally as fundamental as that which would result from allowing combinations of such groups to monopolize the market. Therefore, this court does not consider that only where combined business and labor groups have gone so far as to monopolize the market or fix prices can the Sherman Act be regarded as proscribing the combination.

The defendants next contend that the charges of the present complaint show merely that Local No. 27, pursuing its own self-interest in eliminating the use of products which would reduce the demand for the services of its members, has succeeded in obtaining collective bargaining agreements with its employers, and that contracts so obtained are protected by the Clayton and Norris-LaGuardia Acts. In this connection they assert that the complaint charges no more than that the glazing contractors have contracted with the union to provide that all glazing performed by these contractors shall be done on the construction job site, and that the employer group has aided the union to achieve the conditions specified in the contracts. They further assert that the complaint does not allege any benefit to the contractors resulting from the alleged conspiracy, nor does it charge that the defendant local was "used" by the employer group to further the latter's aims.

That a union's contracts with employers possess the immunity claimed by the defendants is clear. See United States v. Bay Area Painters and Decorators Joint Committee, Inc., D.C.N.D.Cal. 1943, 49 F.Supp. 733. The Supreme Court, in Allen Bradley, however, discussed the type of situation in which immunity is conferred upon the contracts, pointing out that where such agreements "stand alone" they are not in violation of the Sherman Act. The union there involved had argued that its bargaining agreements with the employers immunized the union from a charge under the Sherman Act. The agreements provided that the employers would not purchase electrical equipment from any manufacturer which did not

employ members of the union. The Court stated:

"We may assume that such an agreement standing alone would not have violated the Sherman Act. But it did not stand alone. It was but one element in a far larger program in which contractors and manufacturers united with one another to monopolize all the business in New York City, to bar all other business men from that area, and to charge the public prices above a competitive level. It is true that victory of the union in its disputes, even had the union acted alone, might have added to the cost of goods, or might have resulted in individual refusals of all of their employers to buy electrical equipment not made by Local No. 3. So far as the union might have achieved this result acting alone, it would have been the natural consequence of labor union activities exempted by the Clayton Act from the coverage of the Sherman Act. Apex Hosiery Co. v. Leader, supra, 310 U.S. 503, 60 S.Ct. [982] 987, 84 L.Ed. 1311. But when the unions participated with a combination of business men who had complete power to eliminate all competition among themselves and to prevent all competition from others, a situation was created not included within the exemptions of the Clayton and Norris-La Guardia Acts." 325 U.S. at page 809, 65 S.Ct. at page 1540.

The present complaint charges considerably more than the "natural consequences of labor union activities exempted by the Clayton Act from the coverage of the Sherman Act." While the defendants contend that the complaint merely alleges that the union has contracted with the alleged co-conspirators for job site glazing, and that the contractors have aided the union in enforcing the terms of those contracts, the complaint itself reveals more. It alleges that the contractors have conspired among themselves as well as with the union to engage in the various activities charged. Thus, the complaint states that "the defendant Hamilton and co-conspirators have entered into contracts with the defendant Local 27, and the defendants and co-conspirators have engaged in a combination and conspiracy * * * in violation of Section 1 of the Sherman Act." It further states that "the combination and conspiracy herein charged has consisted of a continuing agreement, understanding and concert of action among the defendants and co-conspirators" to carry out the terms of the conspiracy. These allegations thus do not show merely that the union has contracts with the contractors, individually, which contracts were obtained by activity of the union "acting alone." They charge that the contractors and union have acted concertedly in restraint of trade, the union participating with a combination of contractors to suppress the competition of pre-glazed products. The Allen Bradley case shows that such concert of action, even when beneficial to the union and its members, removes the protection which the union would otherwise possess under the Clayton and Norris-LaGuardia Acts. See, to the same effect, United States v. Milk Drivers & Dairy Employees Union, D.C., 153 F.Supp. 803.

With respect to the defendants' contention that the complaint does not charge a conspiracy to the benefit of the employer group as well as to the union, the complaint specifically alleges that the offenses charged "have increased the volume of business done by the defendant Hamilton and the co-conspirators," and that the conspiracy is "to the benefit of the said union glazing contractors."

The court cannot agree with the defendants' contention that a union is immune from a Sherman Act charge of a conspiracy between labor and business unless it is alleged that the union has been "used" by the employer group to violate the Act. The Allen Bradley case held that where a union aids and

abets an employer group to violate the Sherman Act, it has lost its immunity. The present complaint, in charging that Local 27 has engaged in several activities in furtherance of the conspiracy, in charging that the activities have resulted in an increase in the business of the contractors, and in charging that the two groups have conspired together in restraint of trade, does allege that Local 27 has aided and abetted the group of glazing contractors to violate the Sherman Act.

■ The defendants also contend that this court has no jurisdiction to grant the relief prayed for in the complaint. The court, however, agrees with the plaintiff on this point that this contention is premature. As stated in Dederick v. North American Co., D.C.S.D.N.Y. 1943, 48 F.Supp. 410, 412. "For purposes of a motion to dismiss a complaint the prayer for relief may be disregarded. The question is not whether the relief sought can be granted but whether any relief can be granted."

The motions of the defendants to dismiss the plaintiff's complaint will be denied.

The defendants are ordered to file their respective answers to the complaint on or before October 31, 1957.