## UNITED STATES *v.* EMPLOYING PLASTERERS ASSOCIATION OF CHICAGO ET AL.

No. 440.   Argued February 3, 1954.—Decided March 8, 1954.

*Charles H. Weston* argued the cause for the United States. With him on the brief were *Acting Solicitor General Stern, Assistant Attorney General Barnes* and *Marvin E. Frankel.*

*Thomas M. Thomas* argued the cause for the Employing Plasterers Association of Chicago, appellee. With

him on the brief was *Howard Ellis*. *Perry S. Patterson* entered an appearance.

*Daniel D. Carmell* argued the cause and filed a brief for the Journeymen Plasterers' Protective and Benevolent Society, Local No. 5, et al., appellees.

MR. JUSTICE BLACK delivered the opinion of the Court.

The United States brought this civil action in a Federal District Court charging the defendants (appellees here) with having violated § 1 of the Sherman Act which forbids combinations or conspiracies in restraint of interstate trade or commerce.* Holding that the complaint failed to state a cause of action on which relief could be granted under the Act, the District Court dismissed. The case is before us on direct appeal, 15 U. S. C. § 29, and the only question we must decide is whether the District Court's dismissal was error. We hold it was.

In summary the Government's complaint alleges:

> Defendants are (1) a Chicago trade association of plastering contractors; (2) a local labor union of plasterers and their apprentices; (3) the union's president. These contractors and union members employed by them do approximately 60% of the plastering contracting business in the Chicago area of Illinois. Materials used in the plastering, such as gypsum, lath, cement, lime, etc., are furnished by the contractors. Substantial quantities of this material are produced in other states, bought by Illinois build-

---

*26 Stat. 209, as amended by 50 Stat. 693, 15 U. S. C. § 1, so far as here relevant reads:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal . . . ." The complaint here also charged a violation of § 2 of the Sherman Act, but the Government has not pressed that claim here. Cf. *Standard Oil Co.* v. *United States*, 337 U. S. 293, 314.

ing materials dealers and shipped into Illinois, sometimes going directly to the place of business of the dealers and sometimes directly to job sites for use by the plastering contractors under arrangements with the dealers. The practical effect of all this is a continuous and almost uninterrupted flow of plastering materials from out-of-state origins to Illinois job sites for use there by plastering contractors. Restraint or disruption of plastering work in the Chicago area thus necessarily affects this interstate flow of plastering materials adversely. Since 1938 the Chicago defendants have acted in concert to suppress competition among local plastering contractors, to prevent out-of-state contractors from doing any business in the Chicago area and to bar entry of new local contractors without approval by a private examining board set up by the union. The effect of all this has been an unlawful and unreasonable restraint of the flow in interstate commerce of materials used in the Chicago plastering industry.

The District Court did not question that the foregoing and other factual allegations showed a combination to restrain competition among Chicago plastering contractors. But the court considered these allegations to be "wholly a charge of local restraint and monopoly," not reached by the Sherman Act. And the court held that there was no allegation of fact which showed that these powerful local restraints had a sufficiently adverse effect on the flow of plastering materials into Illinois. At this point we disagree. The complaint plainly charged several times that the effect of all these local restraints was to restrain interstate commerce. Whether these charges be called "allegations of fact" or "mere conclusions of the pleader," we hold that they must be taken into account in deciding whether the Government is entitled to have its case tried.

We are not impressed by the argument that the Sherman Act could not possibly apply here because the interstate buying, selling and movement of plastering materials had ended before the local restraints became effective. Where interstate commerce ends and local commerce begins is not always easy to decide and is not decisive in Sherman Act cases. See *Mandeville Island Farms* v. *American Crystal Sugar Co.*, 334 U. S. 219, 232. However this may be, the complaint alleged that continuously since 1938 a local group of people were to a large extent able to dictate who could and who could not buy plastering materials that had to reach Illinois through interstate trade if they reached there at all. Under such circumstances it goes too far to say that the Government could not possibly produce enough evidence to show that these local restraints caused unreasonable burdens on the free and uninterrupted flow of plastering materials into Illinois. That wholly local business restraints can produce the effects condemned by the Sherman Act is no longer open to question. See, *e. g.*, *United States* v. *Women's Sportswear Manufacturers Assn.*, 336 U. S. 460, 464.

The Government's complaint may be too long and too detailed in view of the modern practice looking to simplicity and reasonable brevity in pleading. It does not charge too little. It includes every essential to show a violation of the Sherman Act. And where a bona fide complaint is filed that charges every element necessary to recover, summary dismissal of a civil case for failure to set out evidential facts can seldom be justified. If a party needs more facts, it has a right to call for them under Rule 12 (e) of the Federal Rules of Civil Procedure. And any time a claim is frivolous an expensive full dress trial can be avoided by invoking the summary judgment procedure under Rule 56.

We hold it was error to dismiss the Government's complaint for failure to state a cause of action.

This leaves the separate contention of the union that it is immune from prosecution for violation of the Sherman Act because of § 20 of the Clayton Act. This contention has no merit under the allegations of the complaint here because they show, if true, that the union and its president have combined with business contractors to suppress competition among them. *Allen Bradley Co.* v. *Local Union No. 3,* 325 U. S. 797.

*Reversed.*

MR. JUSTICE MINTON, with whom MR. JUSTICE DOUGLAS joins, dissenting.*

That, accepting the pleadings as true, there are and were conspiracies to restrain is not open to question. The question is whether the Sherman Act applies, and that depends upon whether the conspiracies are to restrain interstate commerce. In my opinion, the activities here complained of are wholly intrastate, and the restraint upon interstate commerce, if any, is so indirect, remote and inconsequential as to be without effect and wholly foreign to an intent or purpose to conspire to restrain interstate commerce.

There is no interference with interstate commerce. That commerce ends when the plaster and lath reach the building site, whether they come first to material suppliers and at rest in their warehouses and afterwards on order delivered to the contractors on the job, as most of the transactions are alleged to be handled, or are delivered directly to the job. The construction of a building and the incorporation therein of plaster and lath are purely local transactions.

"Nor is building commerce; and the fact that the materials to be used are shipped in from other states

---

*[This opinion applies also to No. 439, *United States* v. *Employing Lathers Assn. et al., post,* p. 198.]

does not make building a part of such interstate commerce." *Anderson* v. *Shipowners Assn.,* 272 U. S. 359, 364.

The Government does not and could not contend that building is commerce. It contends that the appellees' acts affect commerce, relying upon such cases as *Labor Board* v. *Denver Building Council,* 341 U. S. 675, and *Walling* v. *Jacksonville Paper Co.,* 317 U. S. 564. But those cases arose under different statutes, the sweep of which is broader than that of § 1 of the Sherman Act, which declares illegal only those contracts, combinations and conspiracies "in restraint of trade or commerce among the several States." The *Denver Council* case arose under the Labor Management Relations Act, which provides:

"SEC. 10. (a) The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce. . . ." 61 Stat. 146, 29 U. S. C. § 160 (a).

Section 2 of that Act defines "affecting commerce" as follows:

"(7) The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." 61 Stat. 138, 29 U. S. C. § 152 (7).

The *Jacksonville Paper* case arose under the Fair Labor Standards Act, which is applicable to "employees who [are] engaged in commerce or in the production of goods for commerce . . . ." 52 Stat. 1062, 29 U. S. C. § 206. Furthermore, that case dealt with transactions that took place in the stream of commerce. Compare *Higgins* v.

*Carr Bros. Co.,* 317 U. S. 572. In the instant cases, the stream of commerce stops at the building site.

Insofar as the factual allegations in these complaints are concerned, the appellees are essentially charged with conspiring to divide the plastering and lathing business in the Chicago area among themselves, limiting the number and classes of persons who may become contractors or union members and reducing competition among the contractors, primarily by means of union control over those who may engage in the business either as contractors or as union members. The acts of the appellees here complained of thus are all related to local building construction and those permitted to engage in such construction. The allegations do not establish any interference with the flow of commerce, at its beginning or end or in the course of its flow, or that anything is done to influence the place from whence or to which the materials come or go, or their price. To be sure, the complaints contain bald statements to the effect that the alleged conspiracies are in restraint of interstate commerce. However, these conclusional allegations add nothing and do not conceal the failure to set forth facts showing any direct or substantial restraint on interstate commerce or a purpose or intent to do so. What is charged in these cases may constitute a restraint under state jurisdiction and may remotely or indirectly affect interstate commerce. But that has been consistently held to be no violation of the Sherman Act. *Apex Hosiery Co.* v. *Leader,* 310 U. S. 469, 495; *Levering & Garrigues Co.* v. *Morrin,* 289 U. S. 103, 107.

*Industrial Association of San Francisco* v. *United States,* 268 U. S. 64, was a case involving far more offensive action than the instant cases. In that case, contractors and suppliers, in order to force an "open shop," required builders to secure permits for certain materials

from a builders' exchange, refusing such permits to those who did not maintain an open shop. Some of the materials came from other States, and the permits were so handled as to control materials, such as plumbers' supplies, that came altogether from out-of-state sources. This Court, commenting on the "established general facts" of the plan, said:

"Interference with interstate trade was neither desired nor intended. On the contrary, the desire and intention was to avoid any such interference, and, to this end, the selection of materials subject to the permit system was substantially confined to California productions. The thing aimed at and sought to be attained was not restraint of the interstate sale or shipment of commodities, but was a purely local matter, namely, regulation of building operations within a limited local area, so as to prevent their domination by the labor unions. Interstate commerce, indeed commerce of any description, was not the object of attack, 'for the sake of which the several specific acts and courses of conduct were done and adopted.' *Swift and Company* v. *United States,* 196 U. S. 375, 397. The facts and circumstances which led to and accompanied the creation of the combination and the concert of action complained of, which we have briefly set forth, apart from other and more direct evidence, are 'ample to supply a full local motive for the conspiracy.' *United Mine Workers* v. *Coronado Co.,* 259 U. S. 344, 411." 268 U. S., at 77.

In language prophetic, this Court further said:

"But here, the delivery of the plaster to the local representative or dealer was the closing incident of the interstate movement and ended the authority

of the federal government under the commerce clause of the Constitution. What next was done with it, was the result of new and independent arrangements." 268 U. S., at 79.

Although the permits were used so as to interfere with the free movement of materials and supplies from other States, this Court said:

"It was, however, an interference not within the design of the appellants, but purely incidental to the accomplishment of a different purpose. The court below laid especial stress upon the point that plumbers' supplies, which for the most part were manufactured outside the state, though not included under the permit system, were prevented from entering the state by the process of refusing a permit to purchase other materials, which were under the system, to anyone who employed a plumber who was not observing the 'American plan.' This is to say, in effect, that the building contractor, being unable to purchase the permit materials, and consequently unable to go on with the job, would have no need for plumbing supplies, with the result that the trade in them, to that extent, would be diminished. But this ignores the all important fact that there was no interference with the freedom of the outside manufacturer to sell and ship or of the local contractor to buy. The process went no further than to take away the latter's opportunity to use, and, therefore, his incentive to purchase. . . ."

.     .     .     .     .

"The alleged conspiracy and the acts here complained of, spent their intended and direct force upon a local situation,—for building is as essentially local as mining, manufacturing or growing crops,—and if, by

a resulting diminution of the commercial demand, interstate trade was curtailed either generally or in specific instances, that was a fortuitous consequence so remote and indirect as plainly to cause it to fall outside the reach of the Sherman Act." 268 U. S., at 80, 82.

As I see it, that is all that happens here. Interstate commerce has ended. There is no intent or purpose to restrain interstate commerce. The effect upon commerce is incidental, remote and indirect. It is a restraint that spends itself on a purely local incident. If contractors of materials and supplies may combine to compel an open shop by far more drastic measures, as in the *Industrial Association* case, then surely the workers and contractors may combine to promote a closed system by an agreement local in its nature.

The case of *Levering & Garrigues Co.* v. *Morrin,* 289 U. S. 103, which followed the *Industrial Association* case, is in point here. In that case, the companies, engaged in the building of steel bridges, operated open shops. The unions by strike and other techniques sought to force closed shops. The companies sought an injunction under the Sherman Act. The complaint was dismissed for failure to state a cause of action. This Court said:

"Accepting the allegations of the bill at their full value, it results that the sole aim of the conspiracy was to halt or suppress local building operations as a means of compelling the employment of union labor, not for the purpose of affecting the sale or transit of materials in interstate commerce. *Use* of the materials was purely a local matter, and the suppression thereof the result of the pursuit of a purely local aim. Restraint of interstate commerce was not an object of the conspiracy. Prevention of

the local use was in no sense a means adopted to effect such a restraint. It is this exclusively local aim, and not the fortuitous and incidental effect upon interstate commerce, which gives character to the conspiracy. . . . If thereby the shipment of steel in interstate commerce was curtailed, that result was incidental, indirect and remote, and, therefore, not within the anti-trust acts, as this court, prior to the filing of the present bill, had already held. . . ." 268 U. S., at 107.

If a union may strike and obtain its objective of a closed shop without interfering with interstate commerce, as in the *Levering* case, the unions in the instant cases could certainly bargain and agree with the employers to reach the same result. See also *United Leather Workers* v. *Herkert & Meisel Trunk Co.*, 265 U. S. 457, and see *United States* v. *Frankfort Distilleries*, 324 U. S. 293, 297, where the cases discussed above are distinguished.

The Government has relied heavily upon *Mandeville Farms* v. *American Crystal Sugar Co.*, 334 U. S. 219. But that decision, as did the *Frankfort Distilleries* case, recognized the distinct line of cases I rely upon here as distinguishable from the holding therein. Page 234.

In No. 440, it is alleged that the appellees have prevented and discouraged out-of-state plastering contractors from doing business in the Chicago area by slowdowns, fines on union labor, intimidation, and other means. Assume that such tactics are effective to keep outstate contractors from seeking contracts in the Chicago area. Contracting to plaster a building in Chicago by an outstate contractor is not commerce, even if the contractor did intend to bring his men from outstate, any more than bringing men from one State into another to play baseball is commerce. *Toolson* v. *New York*

*Yankees,* 346 U. S. 356; *Federal Baseball Club of Baltimore* v. *National League of Professional Baseball Clubs,* 259 U. S. 200, 208. The materials to plaster the building flow without interruption to the building site. There a local labor situation arises that has nothing to do with commerce or any conspiracy to restrain it. That is all that is involved here, and therefore commerce in the sense of that term as used in the Sherman Act is not involved.

I would affirm.