**UNITED STATES of America, Plaintiff,**

**v.**

**LOGAN COMPANY, Mathews Conveyer Company, Mesta Machine Company, Palmer-Bee Company, Standard Conveyor Company, United Engineering and Foundry Company, Defendants.**

**Civ. A. No. 9658.**

United States District Court
W. D. Pennsylvania.

Dec. 16, 1954.

C.A. § 1. Plaintiff prays that the Court decree that defendants have violated the Act and that certain alleged agreements and understandings be adjudged unlawful and their performance enjoined. Each defendant has filed an answer admitting the existence of certain patent license agreements, but denying the illegality of such agreements and denying also the general allegations of unlawful conspiracy to restrain trade or commerce.

The instant motion was presented by defendant United Engineering and Foundry Company (hereinafter called "United") for judgment on the pleadings, under Rule 12(c), 28 U.S.C. The reasons stated in the motion in support thereof are as follows:

"1. The complaint, in paragraphs 14, 15 and 16 thereof, charges agreements and understandings by and among all of the defendants except defendant United Engineering and Foundry Company. The complaint, in paragraphs 17 and 19 thereof, recites the negotiation and execution of a patent license agreement between defendants United Engineering and Foundry Company and Mesta Machine Company, but does not allege any other agreement or understanding between United Engineering and Foundry Company and any other defendant or defendants.

"2. The negotiation and execution of the patent license with Mesta Machine Company, as alleged in the complaint, was not an illegal act.

"3. The complaint fails to state a claim upon which relief can be granted against defendant United Engineering and Foundry Company."

In other words, United asserts (1) that the only understanding alleged to exist between it and any other defendant is that referred to in paragraphs 17 and 19 of the complaint, (2) that that understanding, a patent license agreement entered into between United and defendant Mesta Machine Company, was and is not

Donald G. Balthis, Trial Atty., Dept of Justice, John W. McIlvaine, U. S. Atty., Pittsburgh, Pa., for the United States.

James S. Crawford, Patterson, Crawford, Arensberg & Dunn, Pittsburgh, Pa., John G. Buchanan, Smith, Buchanan, Ingersoll, Rodewald & Eckert, Pittsburgh, Pa., for defendants.

MILLER, District Judge.

This is an action brought against the six defendants for alleged violations of Section 1 of the Sherman Act, 15 U.S.

unlawful, and, therefore, (3) that the complaint fails to state a claim upon which relief can be granted.

■ The defendant United concedes in its brief that the foregoing motion is in the nature of a demurrer to the complaint and that all averments of fact contained in the complaint must be, and are, admitted for present purposes. Therefore, the sole issue before the Court is one of law, to wit, whether the complaint states a claim upon which relief can be granted against United. See Art Metal Const. Co., for Use of McCloskey & Co. v. Lehigh Structural Steel Co., 3 Cir., 1940, 116 F.2d 57, 58.

The complaint of the government sets forth, inter alia:

"13. Beginning in or about the year 1939, and continuing thereafter up to and including the date of the filing of this complaint, the defendants have entered into unlawful contracts and have engaged in and are now engaged in an unlawful combination and conspiracy in unreasonable restraint of interstate trade and commerce in the manufacture and sale of sheet chargers among the several states of the United States, in violation of Section 1 of the Sherman Act. The defendants are continuing, and threaten to, and will continue the aforesaid offense, unless the relief hereinafter prayed for in this Complaint is granted.

"Certain of the specific agreements, licenses, arrangements, understandings, and acts which formed a part of said offense and which were used in effectuation thereof are hereinafter more fully set forth and described.

*    *    *    *    *    *

"17. At various times from 1939 up to and including January 1941, Mesta discussed with United a proposed patent license agreement under the Iversen Patent. United indicated that its decision on accepting a license would depend upon the attitude of the other companies in the industry. On or about January 6, 1941, Mesta sent a copy of a proposed license agreement to United. On or about January 15, 1941, United requested that it be furnished with a proposed price schedule before executing the proposed patent license agreement, and on or about January 21, 1941, Mesta forwarded to United such a price schedule and advised United that defendants Logan, Mathews, Palmer-Bee, and Standard were licensees under the Iversen Patent. Thereafter, on or about February 12, 1941, United requested a modification of and additions to the price schedule received from Mesta, which were agreed to and made by Mesta.

*    *    *    *    *    *

"19. Sometime during 1941, but subsequent to the events alleged in paragraph 17 hereof, United and Mesta entered into a patent license agreement under the Iversen Patent bearing an effective date of July 6, 1940, which was substantially identical with the license agreements then in effect between Mesta and the other defendants named herein. At the time of the exchange of the executed agreement between United and Mesta the latter, as a supplement to the license, agreed that in the event Mesta granted a license under the Iversen Patent to any other company on more favorable terms than those incorporated in the license to United, it would make such more favorable terms available to United."

United contends that under the authority of Bement & Sons v. National Harrow Co., 1902, 186 U.S. 70, 22 S.Ct. 747, 46 L.Ed. 1058, and United States v. General Elec. Co., 1926, 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362, what it is alleged to have done in paragraphs 17 and 19 of the complaint is not illegal, and that the taking of a license with a minimum price-fixing provision from Mesta is lawful and natural under the circumstances.

■■ It may be assumed, for present purposes, that United is entirely correct

in its assertion that the agreements specifically alleged in the complaint are not unlawful, and that the allegedly offending provisions thereof are not violative of the Sherman Act, under the authority of the cases cited by United. However, even if the patent license agreements are lawful if considered alone, it is well settled that lawful devices may be used as part of an unlawful scheme in violation of the Sherman Act. Standard Oil Co. (Indiana) v. United States, 1931, 283 U.S. 163, 175, 51 S.Ct. 421, 75 L.Ed. 926; United States v. Reading Company, 1912, 226 U.S. 324, 357, 33 S.Ct. 90, 57 L.Ed. 243. The government alleges that the patent license agreements are being so used. Assuming that the specific agreements alleged are not illegal per se, it is still necessary to know the intent or purpose with which they were conceived and the effect of their performance in order to determine whether defendants, through the use of such agreements, have unlawfully conspired to restrain trade as alleged. United States v. Paramount Pictures, Inc., 1948, 334 U.S. 131, 173, 174, 68 S.Ct. 915, 92 L.Ed. 1260. In order to determine the legality of the patent license agreement between Mesta and United and the agreement as to the terms of future license agreements between Mesta and others entered into as a supplement to the license (paragraph 19, complaint), in the light of the purpose, intent, use and effect of such agreements, this Court should have full knowledge of the facts which may be adduced at the trial. See United States v. General Ry. Signal Co., D.C.W.D.N.Y.1952, 110 F.Supp. 422, 425; United States v. Vehicular Parking, D.C. D.Del.1944, 54 F.Supp. 828, 830; United States v. Bausch & Lomb Optical Co., D.C.S.D.N.Y.1943, 3 F.R.D. 331, 333.

█ It appears sufficiently from the complaint that the defendants, including United, have, partly by means of certain alleged patent license agreements, conspired unlawfully to restrain unreasonably interstate trade and commerce in the manufacture and sale of sheet chargers among the several states. If these allegations be true, the fact that United appears by the complaint to have been a latecomer to the alleged conspiracy is immaterial. A latecomer to an unlawful conspiracy is as liable to be enjoined from continuing to participate in it as are its originators. See United States v. Masonite Corporation, 1942, 316 U.S. 265, 275, 62 S.Ct. 1070, 86 L.Ed. 1461; Interstate Circuit, Inc., v. United States, 1939, 306 U.S. 208, 227, 59 S.Ct. 467, 83 L.Ed. 610.

Moreover, the averments of paragraphs 14 through 19 of the complaint constitute, by the terms of paragraph 13, only a part of the offense averred in paragraph 13. Therefore, the effect of the general allegations of paragraph 13 is not limited by the more specific averments of paragraphs 17 and 19, and paragraph 13 sufficiently avers a violation of the Sherman Act on the part of all the defendants. See Louisiana Farmers' Protective Union, Inc., v. Great Atlantic & Pacific Tea Co. of America, Inc., 8 Cir., 1942, 131 F.2d 419, 422, 423.

In United States v. Employing Plasterers Association of Chicago, 1954, 347 U.S. 186, 188, 74 S.Ct. 452, 454, 98 L.Ed. 618, in which the principal issue involved was the interstate nature of the Sherman Act violations alleged, the Court held:

"* * * The complaint plainly charged several times that the effect of all these local restraints was to restrain interstate commerce. Whether these charges be called 'allegations of fact' or 'mere conclusions of the pleader,' we hold that they must be taken into account in deciding whether the Government is entitled to have its case tried."

For the foregoing reasons, defendant United's motion for judgment on the pleadings must be dismissed.

An appropriate order is entered.