**MARKS FOOD CORPORATION, a corporation, et al., Plaintiffs,**

v.

**BARBARA ANN BAKING CO., a corporation, et al., Defendants.**

**No. 20576.**

United States District Court
S. D. California,
Central Division.
April 24, 1958.

Alfred C. Ackerson, Los Angeles, Cal., for plaintiffs.

Overton, Lyman & Prince, Carl J. Schuck, Lawrence J. Larson, Ernest E. Johnson, Los Angeles, Cal., and Heller, Ehrman, White & McAuliffe, Samuel S. Stevens, San Francisco, Cal., for defendants Lagendorf United Bakeries, Inc. and Barbara Ann Baking Co.

Loeb & Loeb, Francis G. Stapleton, John L. Cole, Robert A. Holtzman, Los Angeles, Cal., for defendant Continental Baking Co.

Gibson, Dunn & Crutcher, Julian O. von Kalinowski, John J. Hanson, Los Angeles, Cal., for defendants Interstate Bakeries Corp., Log Cabin Bread Co., and Weber Baking Co.

Dolley, Jessen & Painter, Howard Painter, Vernon Bettin, Los Angeles, Cal., for defendant Oroweat Baking Co.

WESTOVER, District Judge.

Plaintiffs filed a complaint for treble damages under the Sherman, Clayton and Robinson-Patman Acts, 15 U.S.C.A. §§ 1–7, 15 note, 12 et seq., alleging in part that the manufacture of bread in the Los Angeles area is controlled by a number of large baking companies named as defendants in the proceedings. Plaintiffs allege the business of producing and marketing bread, as carried on by the defendants, is "either in or directly affects trade and commerce among the several states."

Plaintiffs further allege that in the business of producing and marketing bread the defendants purchase flour and other ingredients which are shipped across state lines to the defendants in California; that in addition thereto defendants' baking equipment and replacement and maintenance parts are purchased from sources in states other than the State of California. At the time of filing the Complaint, plaintiffs demanded a jury trial.

Defendants appeared and moved to dismiss the complaint on the ground that plaintiffs had not satisfied the jurisdictional interstate commerce requirements of the antitrust laws. The Motion to Dismiss was denied, and subsequent thereto defendants appeared and answered, denying that the transactions and occurrences which were the subject matter of plaintiffs' complaint satisfied the jurisdictional requirements of the Sherman, Clayton and Robinson-Patman Acts. In addition thereto defendants filed a counter-claim in which they alleged plaintiffs, together with other persons unknown, entered into a combination and conspiracy in violation of the antitrust Acts.

At the outset of this case plaintiffs were met with a challenge of the jurisdiction of the court. Where juris-

diction becomes a vital issue in the case, that issue should if possible be determined before proceeding with the other issues involved.

During the various conferences and pretrial hearings the Court inquired of plaintiffs the basis of their claim relating to interstate commerce. Plaintiffs responded by stating that defendants purchased flour and machinery outside the state which was imported into California and used in the making of bread. The question immediately arose whether the purchase of materials and machinery in states other than California, subsequently brought into the state by defendants and used in the manufacture of bread, was a sufficient interstate activity under the antitrust Acts in question to invest this Court with jurisdiction.

The Court signed a pretrial order which determined that it was in the interest of justice, orderly procedure and expeditious determination of the case to resolve the issue of the Court's jurisdiction over the subject matter separately and prior to trial on the merits. The case was set for pretrial or trial, as the Court might in its discretion determine, at which time plaintiffs were to offer all evidence, both oral and documentary, on which they relied to establish the necessary jurisdictional requirements. Discovery proceedings of all parties were limited to the ascertainment of facts relating to the interstate commerce issues.

■ At the time designated the Court, without a jury, proceeded to try the interstate commerce issue. As plaintiffs had at the time of filing the complaint demanded a jury trial, they objected to the Court holding a hearing on the question of jurisdiction without a jury. The objection was overruled, as it was the opinion of the Court that the question of jurisdiction is a question exclusively within the province of the Court and is not a matter to be presented to a jury for determination. Taylor v. Hubbell, 9 Cir., 188 F.2d 106. Gilbert v. David, 235 U.S. 561, 35 S.Ct. 164, 59 L.Ed. 360.

At the hearing plaintiffs established that defendants purchased outside the state a substantial portion of their flour used in the manufacture of bread within the State of California and also that the machinery used in the making of bread had been purchased outside the state and shipped into California across state lines by the defendants.

By its pretrial order the Court had limited the issues to the question of jurisdiction. Plaintiffs attempted to establish that defendants have monopolized the market for bread in the Los Angeles area and that there was a conspiracy among defendants relative to monopoly and price-fixing. Plaintiffs evidently were of the opinion that a determination of these issues was necessary to resolve the jurisdictional issue.

Plaintiffs contended defendants have monopolized the bread market, but they were unable to designate what was the "market" in question. Plaintiffs are the owners and operators of certain supermarkets. However, plaintiffs' supermarkets are only a small percentage of the supermarkets operating in the Los Angeles area. In addition, there are literally thousands of stores in which bread is sold. No one could give any evidence as to the number of bakeries. Testimony was to the effect that there are hundreds of bakeries in the Los Angeles area. It is true many of them are small, but each makes bread and sells to the general public and, as a consequence, contributes to the general market. The evidence also disclosed that in addition to the smaller bakeries operating in the Los Angeles area there were other major bakeries contributing bread to the market, such as Safeway, Ralphs, Golden Cream, Golden Crust, Eagle, Basso, Helms, Puente, Van de Camp, et cetera.

It was contended by plaintiffs that such bakeries were not major competitors because they primarily sold bread in their own chains. The evidence indicated that even though Safeway, Ralphs, et cetera, sold their own bread, nevertheless, the defendants' bread was, in many instances, offered for sale to the general public. Plaintiffs attempted to restrict the definition of the term "mar-

ket" to the supermarkets operated by them and some of their competitors, ignoring the thousands of other outlets.

There was no evidence that any of the retail outlets, including plaintiffs', was forced to sell any of defendants' bread. Bread is sold by the outlets because of a public demand. At no time has any of the defendants forced sales upon any of plaintiffs or on any other markets, or refused to sell to any of them. Bread exhibited for sale in the various stores depends upon the space allocated to the brand of bread, and none of the defendants had any control over the space so allocated. The proprietor or manager of the store determined what space to give to each brand of bread and where the space was allocated. As a consequence, defendants had to deliver to the outlets the amount of bread desired by each, regulated to the amount of space which the outlet would allow for display of bread.

Plaintiffs contend there was a monopoly because of the similarity of size and price charged for bread. It appears from the evidence that the size of loaves of bread is regulated by state statute. Under modern sales techniques bread is usually wrapped in either wax paper or cellophane. Wrapping is accomplished by machinery, and it is probable that all defendants use practically the same type of machinery in bread wrapping. However, each defendant has a distinctive wrapper which sets its product off and apart from that of its competitors.

Plaintiffs also argue that the fact the bread was price-marked by the defendants was an indication of a conspiracy. However, under our modern retail procedures where customers ordinarily wait on themselves, selecting their own merchandise and taking it to a check-out stand for the purpose of computing the amount due, it is absolutely imperative that each item be distinctly price-marked. While it is true there appeared upon the wrapper of each loaf of bread, regardless of the bakery of origin, a suggested uniform retail price, that suggested price was marked upon the loaf of bread by the baking company at the request of the retailer.

From the evidence adduced at the hearing, the Court will find plaintiffs have failed to establish there was either a monopoly of the market, or that defendants have been guilty of a price-fixing conspiracy.

In attempting to establish their claims that defendants' manufacture of bread occurred either in or directly affected interstate commerce, plaintiffs rely on two recent cases—Mandeville Island Farms v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328 and United States v. Employing Plasterers' Association of Chicago, 347 U.S. 186, 74 S.Ct. 452, 98 L.Ed. 618.

In the Mandeville Farms case the Supreme Court held the complaint stated a cause of action and should not have been summarily dismissed. In the United States v. Employing Plasterers' case the lower court held the complaint failed to state a cause of action and dismissed; and again the Supreme Court held it was error to dismiss the complaint for failure to state a claim.

In the case at bar a Motion to Dismiss was denied. The case was set down for pretrial or trial on the interstate commerce issue, at which time the plaintiffs were afforded every opportunity to produce any evidence they had which would establish the court's jurisdiction.

In the Mandeville Farms case, supra, the complaint alleged the refineries controlled the supply of sugar-beet seed; the growers were required to buy the seed from refiners; the refiners specifically designated on what land the seed could be planted; the refiners entered into an agreement to pay a uniform price for sugar-beets, and the farmers had no choice other than to accept the contracts as offered by the refiners or to abandon sugar-beet farming. It was also alleged that the sugar, after having been manufactured from the sugar-beets, was then shipped in interstate commerce.

The facts of the case at bar are certainly far different from the facts as al-

leged by plaintiffs in the Mandeville case. There is no evidence and no contention on the part of plaintiffs herein that the bakers control the supply of flour or dictate in any manner where the flour could be used. There was and is an open market for flour, and each defendant purchased its flour upon the open market. Also, in the Mandeville case, it was alleged that the sugar, after manufacture, was shipped across state lines. If defendants in the case at bar had shipped bread across state lines, we would be constrained to hold they were engaged in interstate commerce. However, there is no evidence to indicate that even one loaf of bread made by defendants was ever shipped across a state line.

In United States v. Employing Plasterers' Ass'n of Chicago, supra, it was alleged that the contractors and union members employed by them acquired approximately sixty percent of the plastering contract business in the Chicago area of Illinois; that materials used in plaster were furnished by the contractors and that substantial quantities of material were produced in other states and bought by the Illinois Material Dealers and shipped into Illinois. It was alleged the defendants acted in concert to suppress competition among local contractors, to prevent out-of-state contractors in the Chicago area, and to bar entry of new work contracts without approval of a private examining board set up by the union.

Certainly the facts introduced in the case at bar fall short of the allegations in the plastering case. There is no evidence in this case that defendants have acted in any way to suppress competition among the bakeries of Southern California, or among the outlets for bakery goods, and the defendants have not attempted to bar any baking company from doing business in the Los Angeles area, or from engaging in competition.

 We come once again to the question presented to plaintiffs at the very inception of this case, i. e., whether the shipment of materials and machinery purchased outside California to bakeries within this state, which were used in the manufacture of bread, is sufficient to bring the transaction within the prohibitions of the antitrust laws.

If plaintiffs' theory in the case at bar were adopted, then any group of manufacturers who purchased raw materials and machinery outside the state, brought them into California and used them to manufacture goods for local retail consumption only, would be amenable to the anti-trust laws.

The latest opinion of the United States Court of Appeals for the Ninth Circuit in regard to what is or what affects interstate commerce is found in Klor's, Inc., v. Broadway-Hale Store, Inc., 255 F.2d 214. The plaintiff in that case, an owner and operator of a retail store. engaging in business in San Francisco, selling radios, television sets, washers, refrigerators, et cetera, brought suit against the defendants, charging them with restraining trade and commerce in interstate distribution and sale of the designated types of goods in the San Francisco area. A motion for summary judgment was granted.

That case is, in many respects, similar to the case at bar. In the Klor's case the defendants were not the only retailers of appliances in San Francisco. There were literally hundreds, if not thousands, of others. In the case at bar the defendants are not the only bakers in the Los Angeles area. There are literally hundreds of other bakeries. In the Klor case a large number of other retailers sell to the San Francisco public and have the brands referred to in the complaint. In the case at bar literally thousands of other retailers sell to the general public the very bread referred to in the case.

The Court says, in Klor's Inc., supra:

"The purpose of the antitrust statutes is to protect the 'public' from the harm which follows from concerted or monopolistic conduct designed to acquire control of a market, usually competitive, to which the public must ultimately resort and which conduct can be described as an undue restraint of trade."

As this Court has heretofore pointed out, the plaintiffs at bar were not able to define what was the "market" and have certainly offered no competent evidence to show that the market has been monopolized by defendants.

The Court in the Klor case continues:

" * * * It is clear that control or attempted control of all competitors is the evil which causes the contracts, combinations, or conspiracies to be the type prohibited * * * "

Again, in the case at bar, there is no evidence that the acts of the defendants have controlled or attempted to control all or any substantial part of the competitors within the area involved.

The Circuit Court goes on to say:

" * * * As defendants point out there are literally hundreds of dealers in the San Francisco Bay Area dealing in the same kinds and brands of major appliances as plaintiff and defendant Broadway-Hale. * * * Additionally, there are numerous brands of appliances to which plaintiff was not denied access and which compete favorably with those he was denied."

In the case at bar, after a full hearing on the question of the interstate commerce phase of this case, we are of the opinion that plaintiffs have failed to establish defendants' business of producing and marketing bread is in or directly affects trade and commerce among the several states as alleged in the complaint.

At the conclusion of the hearing, defendants moved to dismiss the action on the ground plaintiffs had failed in their proof to establish that the Court had jurisdiction of the subject matter of the proceedings. As we find that plaintiffs have been unable to establish the necessary jurisdictional requirements, it necessarily follows that defendants' motion to dismiss must be granted.

Defendants, in answering plaintiffs' complaint, filed a counter-claim in which they alleged plaintiffs had entered into a conspiracy in combination and violation of the antitrust acts. Inasmuch as the necessary requirements relative to interstate commerce have not been found, this Court is of the opinion defendants' counter-claim should be dismissed.

It is so ordered.