The PAUL M. HARROD COMPANY, Plaintiff,

v.

A. B. DICK COMPANY, Defendant.

Civ. A. No. 36519.

United States District Court
N. D. Ohio, E. D.

May 9, 1962.

Francis B. Douglass, Cleveland, Ohio, Donald P. McHugh, Washington, D. C., of counsel, for plaintiff.

Arthur L. Dougan, Jones, Day, Cockley & Reavis, Cleveland, Ohio, Charles A. Horsky, Covington & Burling, Washington, D. C., for defendant.

KALBFLEISCH, District Judge.

Defendant has moved for summary judgment as to all claims in this treble damage action under the antitrust laws (15 U.S.C.A. §§ 1, 2, 14, 15 and 22) and, in the alternative, for dismissal of the complaint for failure to state claims upon which relief can be granted.

Previously, D.C., 194 F.Supp. 502, this Court sustained defendant's motions to dismiss that part of the complaint based on alleged violation of a consent decree entered against defendant in 1948 and to strike the paragraphs embodying such allegations. There has been no amendment of the complaint subsequent to that ruling.

This action was filed on November 19, 1960, and charges defendant with violation of the Sherman Act, Section 1 (15 U.S.C.A. § 1) beginning in 1951, up to and including December 18, 1956, and of Section 2 of the Sherman Act, and Section 3 of the Clayton Act (15 U.S.C.A.

§§ 2, 14) from 1951 up to and including the filing date of the complaint. Plaintiff prays for treble damages and reasonable attorney's fees, but no injunctive relief is requested.

### 1.

Defendant's motion for summary judgment is on the ground that the pleadings, admissions and exhibits in the record demonstrate that, as a matter of law, all claims are barred by the four-year statute of limitations applicable to treble damage actions (15 U.S.C.A. § 15b). Defendant contends that, on deposition, Paul M. Harrod, president of plaintiff, "explicitly and unequivocally" stated that no sale was made by defendant to plaintiff, and no "contract of sale existed within this period of limitations." (Brief, p. 5.)

"Q. Now, tell me, Mr. Harrod—and let's try to keep this specific so we can move along—when was the last sale made to you on this condition or understanding, the date?

* * * * * *

"A. Well, no sales were made to us after the 18th of November.

"Q. So it was some time prior to the 18th of November that you got the last sale on this understanding?

"A. That is correct. (Tr. 58, 59.)

* * * * * *

"Q. * * * After November 19, 1956, when you were notified of the termination of the franchise, I take it you were no longer restricted in doing business with any of Dick's competitors?

"A. That's right." (Tr. 89.)

At most, the testimony cited establishes that the last sale by defendant to plaintiff was sometime prior to November 18, 1956, and that notice of termination by Dick of plaintiff's Distributor Sales and Customer Service Contract was received on November 19, 1956. But Harrod's testimony does not necessarily mean that there was no contract or agreement in effect between the parties after November 19, 1956, and within four years prior to the filing of the complaint. In fact, later in his deposition, at page 94, Harrod testified as follows:

"Q. * * * Did you feel yourself bound by anything after November 19, 1956, by reason of the contract?

"A. To this extent, that the contract was still in force."

and at page 98:

"Q. * * * During this month, that we are talking about, from about November 19 to December 18, what conditions upon which you were required to run your office did Dick dictate? That is one of the allegations of this paragraph.

"A. Well, they attempted to place definite demands on us for the producing of records, among other things."

By the terms of the Distributor Sales and Customer Service Contract (Exhibit 3, par. XIV, p. 11) the agreement was to remain in force until terminated by either party upon thirty days' written notice by registered mail. There being no dispute as to this provision, the contract must have been in effect up to December 19, 1956.

The Court is of the opinion that the foregoing facts, as to which there appears to be no genuine issue, do not support defendant's conclusion that, as a matter of law, there was no contract in effect between the parties within the statutory period. Accordingly, defendant's motion for summary judgment must be overruled.

### 2.

Defendant, alternatively, has moved for dismissal of the complaint on the ground that no claims are stated upon which relief may be granted.

Private persons are permitted to recover treble damages and a reasonable attorney's fee for injuries to their "business or property by reason of anything forbidden in the antitrust laws." (15 U.S.C.A. § 15.) Rule 8(a), Rules of Civil Procedure, 28 U.S.C.A., provides that a

petition shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." It is neither necessary nor desirable to plead evidence in a complaint, although fair notice of the claim should be given clearly and unambiguously. McElhenney Co. v. Western Auto, 269 F.2d 332, 339 (C.A. 4th, 1959); 2 Moore's Federal Practice, 2nd Ed., par. 8.13.

Paragraph 24 charges that defendant violated Section 1 of the Sherman Act by entering into and maintaining contracts in restraint of trade and commerce in duplicating machines, stencils and duplicating supplies, including mimeograph and other impression paper. Paragraph 25 alleges that defendant violated Section 2 of that Act by monopolizing and by attempting to monopolize such trade and commerce and that it violated Section 3 of the Clayton Act by making "sales, or contracts of sale of goods and merchandise, including mimeograph impression paper, upon the condition or understanding that the purchaser shall not use or deal in the goods or merchandise of a competitor of defendant \* \* \*." Paragraph 26 states that the "acts and a plan of action" whereby defendant allegedly violated Sections 1 and 2 consisted of Dick's (a) imposing "high quotas for impression paper upon plaintiff for the purpose of preventing competitors of Dick from selling such impression paper to the plaintiff," (b) "compelling the plaintiff, through the use of these high quotas, to discontinue its purchase of impression paper" from Dick's competitors, (c) embarking upon "a program to establish wholly-owned subsidiaries in thirty-five major cities in the United States in which it now has or formerly had distributors selling Dick stencil duplicating products," (d) unsuccessfully attempting to purchase plaintiff's business pursuant to said program, (e) terminating plaintiff's distributor sales contract effective December 18, 1956, by notice given in November of 1956, (f) purchasing of "certain assets of the plaintiff" in 1956 and 1957, (g) inducing "valuable employees of plaintiff" to leave its employ to work for defendant in its new Baltimore retail establishment, and (h) threatening to cancel its franchise with plaintiff and "through various restrictive provisions in the contract itself, and by policing his operations" dictating "the conditions upon which plaintiff was required to run his business," and denying plaintiff "the opportunity to act as an independent businessman in the running of his distributorship."

Plaintiff alleges, in paragraph 27, that the "contract in restraint of trade, attempt to monopolize, monopolization and sales of goods upon the condition or understanding that plaintiff not deal in the goods of competitors of defendant" have, among other things set forth, forced plaintiff to discontinue doing business with such competitors of defendant, denied such competitors of defendant access to the market represented by plaintiff, forced plaintiff out of the business of distributing duplicating machines, stencils and supplies, damaged plaintiff in the conduct of its business and deprived it of earnings.

Defendant urges that plaintiff has not alleged "and obviously could not allege" (Brief, p. 4) that any contract between defendant and any other distributors, which restricted such distributors as to handling goods of defendant's competitors, caused plaintiff injury and that, therefore, any action maintainable under Section 3 of the Clayton Act must relate only to contracts between the plaintiff and defendant. Such a limitation on the scope of plaintiff's claim is unwarranted. After December 18, 1956, plaintiff could have been damaged by restrictive agreements between Dick and third persons who were potential customers of plaintiff for goods of defendant's competitors which plaintiff may have distributed. Plaintiff thus alleges in paragraph 27(b) that competitors of defendant were "denied access to the market represented by plaintiff *and other distributors*." (Italics added.) During discovery proceedings, in response to defendant's inquiries, plaintiff has furnished the names of five

such distributors. (Exhibit 2, par. 6.) Whether plaintiff will be able to prove it has been damaged by Dick's agreements with such other distributors is another question.

Defendant suggests, as ground for dismissal of the Section 3 Clayton Act claim, that paragraph 25 of the complaint does not allege that the restrictive contracts, claimed to be a violation of Section 3, had the effects of substantially lessening competition or tending to create a monopoly in any line of commerce. (Brief, p. 16.) A contract containing the restrictions complained of is not unlawful, *per se,* under Section 3 but is so only if it has either of the effects stated above. If plaintiff had included such allegations in paragraph 25, this issue, of course, could have been avoided. However, it cannot be said that the complaint does not state a prima facie claim under Section 3, in view of the additional charges under Sections 1 and 2 of the Sherman Act which include either or both of the effects required to be shown under Section 3.

Defendant's arguments in support of its motion to dismiss the claims under Sections 1 and 2 of the Sherman Act rest largely on the premise that the facts alleged in paragraphs 26 and 27 of the complaint are insufficient as a matter of law to constitute claims under those statutes.

The necessity of litigants and courts engaging in extensive preliminary exercises in the formulation of issues has been largely eliminated by the liberal pleading and amending provisions of the Rules of Civil Procedure. If the complaint states a claim in terms clear enough to enable the defendant to file a responsive pleading, that is sufficient. The rule is no different in antitrust cases. Nagler v. Admiral Corp., 248 F.2d 319 (C.A. 2nd, 1957); Niagara of Buffalo, Inc. v. Niagara Mfg. & Distributing Corp., 262 F.2d 106, 107 (C.A. 2nd, 1958). Allegations in the complaint as to the relevant market might be helpful to the parties and the Court but their omission does not necessarily render a complaint fatally defective. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458. That certain of the acts alleged to have been done in furtherance of unlawful conduct under the antitrust laws (such as refusal to deal) may be wholly innocent and lawful in themselves is of no significance in determining whether there has been a violation, or a claim stated, as it is not the form or means used "but the result to be achieved that the statute condemns." American Tobacco Co. v. United States, 328 U.S. 781, 809, 66 S.Ct. 1125, 90 L.Ed. 1575. See also United States v. Aluminum Co. of America, 148 F.2d 416, 431, 432 (C.C.A. 2nd, 1945).

In determining the sufficiency of an antitrust complaint in Radovich v. National Football League, 352 U.S. 445, at page 453, 77 S.Ct. 390, at page 395, 1 L. Ed.2d 456, the Court, stated the test to be used:

"Likewise, we find the technical objections to the pleading without merit. The test as to sufficiency laid down by Mr. Justice Holmes in Hart v. B. F. Keith Vaudeville Exchange, 262 U.S. 271, 274 [43 S.Ct. 540, 67 L.Ed. 977] (1923), is whether 'the claim is wholly frivolous.' While the complaint might have been more precise in its allegations concerning the purpose and effect of the conspiracy, 'we are not prepared to say that nothing can be extracted from this bill that falls under the act of Congress * * *.' Id., at 274 [43 S.Ct. at p. 541]. See also United States v. Employing Plasterers Ass'n, 347 U.S. 186, [74 S.Ct. 452, 98 L.Ed. 618] (1954)."

While the claims and legal theories contained in this complaint "might have been more precise," they are nonetheless discernible. Looking at the document as a whole, the Court is of the opinion that the complaint states a claim upon which relief may be granted and that defendant's motion to dismiss should be overruled.