Mr. Justice Douglas,
with whom Mr. Justice Black and Mr. Justice Clark concur,
dissenting.
If we followed Allen Bradley Co. v. Union, 325 U. S. 797,* we would hold with the Court of Appeals that this *750 multi-employer agreement with the union not to sell meat between 6 p. m. and 9 a. m. was not immunized from the antitrust laws and that respondent’s evidence made out a prima facie case that it was in fact a violation of the Sherman Act.
If, in the present case, the employers alone agreed not to sell meat from 6 p. m. to 9 a. m., they would be guilty of an anticompetitive practice, barred by the antitrust laws. Absent an agreement or conspiracy, a proprietor can keep his establishment open for such hours as he chooses. Cf. Textile Workers v. Darlington Mfg. Co., 380 U. S. 263. My Brother White recognizes, as he must, that the agreement in this case has an “effect on competition [that] is apparent and real” and that it is an “obvious restraint on the product market,” ante, pp. 691 and 692. That Jewel has been coerced by the unions into respecting this agreement means that Jewel cannot use convenience of shopping hours as a means of competition. As the Court of Appeals pointed out, 331 F. 2d, at 550, there is nothing procompetitive about this agreement. Cf. Chicago Board of Trade v. United States, 246 U. S. 231.
At the conclusion of respondent’s case, the District Court dismissed Associated and Bromann from the action, which was tried without a jury, on the ground that there was no evidence of a conspiracy between Associated and the unions. But in the circumstances of this case the collective bargaining agreement itself, of which the District Court said there was clear proof, was evidence of a conspiracy among the employers with the unions to impose the marketing-hours restriction on Jewel via a strike threat by the unions. This tended to take from the merchants who agreed among themselves their freedom to *751 work their own hours and to subject all who, like Jewel, wanted to sell meat after 6 p. m. to the coercion of threatened strikes, all of which if done in concert only by businessmen would violate the antitrust laws. See Fashion Guild v. Federal Trade Comm’n, 312 U. S. 457, 465.
In saying that there was no conspiracy, the District Court failed to give any weight to the collective bargaining agreement itself as evidence of a conspiracy and to the context in which it was written. This Court makes the same mistake. We said in Allen Bradley Co. v. Union, supra, at 808, “... we think Congress never intended that unions could, consistently with the Sherman Act, aid non-labor groups to create business monopolies and to control the marketing of goods and services.” Here the contract of the unions with a large number of employers shows it was planned and designed not merely to control but entirely to prohibit “the marketing of goods and services” from 6 p. m. until 9 a. m. the next day. Some merchants relied chiefly on price competition to draw trade; others employed courtesy, quick service, and keeping their doors open long hours to meet the convenience of customers. The unions here induced a large group of merchants to use their collective strength to hurt others who wanted the competitive advantage of selling meat after 6 p. m. Unless Allen Bradley is either overruled or greatly impaired, the unions can no more aid a group of businessmen to force their competitors to follow uniform store marketing hours than to force them to sell at fixed prices. Both practices take away the freedom of traders to carry on their business in their own competitive fashion.
My Brother White’s conclusion that the concern of the union members over marketing hours is “immediate and direct” depends upon there being a necessary connection between marketing hours and working hours. That connection is found in the District Court’s finding that *752 “in stores where meat is sold at night it is impractical to operate without either butchers or other employees.” 215 F. Supp. 839, 846. It is, however, undisputed that on some nights Jewel does so operate in some of its stores in Indiana, and even in Chicago it sometimes operates without butchers at night in the sale of fresh poultry and sausage, which are exempt from the union ban.
It is said that even if night self-service could be carried on without butchers, still the union interest in store hours would be immediate and direct because competitors would have to stay open too or be put at a disadvantage — and some of these competitors would be non-self-service stores that would have to employ union butchers at night. But Allen Bradley forecloses such an expansive view of the labor exemption to the antitrust laws.

The Allen Bradley decision has been reaffirmed and approved by the Court on numerous occasions. See Brotherhood of Carpenters v. United States, 330 U. S. 395, 400, 411; United States v. Women’s *750 Sportswear Assn., 336 U. S. 460, 464; Giboney v. Empire Storage Co., 336 U. S. 490, 497; United States v. Employing Plasterers Assn., 347 U. S. 186, 190; Teamsters Union v. Oliver, 358 U. S. 283, 296; Meat Drivers v. United States, 371 U. S. 94, 99-101.