Raymond E. KARLINSKY, Howard Jacobson, Harry M. Hatcher and Horsemen's Benevolent and Protective Association, Inc., on behalf of themselves and all others engaged in the business of owning, training and racing thoroughbred horses in the United States, who are similarly situated, Plaintiffs,

v.

The NEW YORK RACING ASSOCIATION, Inc., et al., Defendants.

No. 69 Civ. 4082.

United States District Court, S. D. New York.

March 4, 1971.

Jesse Moss, New York City, for plaintiffs.

Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, for defendants other than Record and Thoroughbred; O. Carlysle McCandless, David R. Hyde, Roger S. Fine and Laurence T. Sorkin, New York City, of counsel.

Satterlee, Warfield & Stephens, New York City, and Harbison, Kessinger, Lisle & Bush, Lexington, Ky., for defendant Thoroughbred Owners & Breeders Assn., Inc.; James F. Dwyer, William C. Scott, Rufus Lisle and Mary M. Luria, New York City, of counsel.

Townley, Updike, Carter & Rodgers, New York City, for defendant Record Pub. Co., Inc.; Richard J. Barnes, John D. Canoni and L. Kevin Sheridan, New York City, of counsel.

LASKER, District Judge.

The Horsemen's Benevolent and Protective Association, Inc. ("HBPA") is a Rhode Island membership corporation whose members own and train thoroughbred horses. Plaintiffs Karlinsky, Jacobson and Hatcher are owners and trainers of thoroughbred horses. This suit is brought against The New York Racing Association, Inc. ("NYRA"), Jockey Club, Thoroughbred Owners & Breeders Association, Inc. ("Thoroughbred"), Record Publishing Company, Inc. ("Record") and the President and Trustees of NYRA. The complaint alleges monopolization of the fundamental aspects of thoroughbred racing in vi-

olation of Sections 1 and 2 of the Sherman Act.

The defendants move under Rule 12(b) (6) [1] of the Federal Rules of Civil Procedure to dismiss the amended complaint for failure to state a claim upon which relief can be granted. The motions are granted as to Record and Thoroughbred and denied as to the other defendants.

Earlier in the history of the case defendants moved to dismiss the original complaint, which included an additional cause of action, under Section 2(a) of the Clayton Act (as amended by the Robinson-Patman Act). The motions were granted with leave to amend the complaint for the purpose of stating claims under Sections 1 and 2 of the Sherman Act, and without leave to amend as to the Robinson-Patman Act claim. Judge MacMahon found, 310 F. Supp. 937 (S.D.N.Y.1970), that the complaint failed to comply with the requirements of Rule 8, F.R.Civ.P., that it be "simple, concise and direct" and that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." As to the Sherman Act material, he found that the complaint failed to allege that the anti-competitive restraints resulted from an agreement among the defendants (although he did hold that "[t]he allegations relating to a conspiracy to restrain trade might, under a rather strained interpretation of the rules, state a claim for relief under § 1 of the Sherman Act"); and that the complaint failed to allege "a relevant market, the activity monopolized or defendants' control of the market" as required to state a claim under § 2. The issue to be determined is whether the amended complaint now complies with the requirements of Rule 8 and has cured the deficiencies noted in Judge MacMahon's opinion. Although stylistically the amended complaint retains the "meandering" and "prolix" characteristics of the original, I conclude that it does.

■ At the outset it may be noted that the question of compliance with the Rule 8 requirement of conciseness is not to be judged by the length of the complaint. As stated in 2A Moore's Federal Practice, 2d ed., 1708,

> "What is a 'short and plain' statement depends, of course, on the circumstances of the case. For example, a complaint for conversion, or to recover on a note, can be stated in half a page. On the other hand a complaint dealing with a more complex matter, as in an antritrust action, * * * will be more extended and may require more particularity."

The test of compliance with Rule 8 is whether the pleadings give *"fair notice* of the claim asserted so as to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of res judicata, and to show the type of case brought, so that it may be *assigned to the proper form of trial."* *Id.,* at 1695. (Emphasis in original.)

■ Long and involved complaints do not per se fail to pass the test of sufficiency under Rule 8, as clearly indicated by the Supreme Court's approval of the sufficiency of an antitrust complaint, although acknowledging that "[t]he Government's complaint may be too long and too detailed in view of the modern practice looking to simplicity and reasonable brevity in pleading." United States v. Employing Plasterers' Ass'n of Chicago, 347 U.S. 186, 189, 74 S.Ct. 452, 454, 98 L.Ed. 618 (1954) (Black, J.).

---

1. Plaintiff Record Publishing Company, Inc. also moves to dismiss under Rule 12 (b) (2) and (3) on the grounds that as to it venue is improperly laid in the *Southern District of New York* and that the court lacks personal jurisdiction over defendant Record. Since Record's motion to dismiss under Rule 12(b) (6) is granted, it is unnecessary to determine the motion made under Rule 12(b) (2) and (3).

Furthermore, we must be guided by the observation that " * * * the courts have ruled time and time again that a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." 2A Moore's Federal Practice, 2d ed., 1705–6.

Measured by these standards the amended complaint, which has reorganized and clarified the original complaint in important respects, is acceptable under the Federal Rules of Civil Procedure, and, as the Court said in *Employing Plasterers'*, supra, 347 U.S. at 189, 74 S.Ct. at 454:

"If a party needs more facts, it has a right to call for them under Rule 12 (e) of the Federal Rules of Civil Procedure, 28 U.S.C.A. And any time a claim is frivolous an expensive full dress trial can be avoided by invoking the summary judgment procedure under Rule 56."

Moving on from a discussion of general pleading principles, I find that the amended complaint, while remaining less than a model of the pleader's art, has cured the substantive deficiencies found fatal by Judge Mac-Mahon: (1) Paragraph Forty-fourth alleges a conspiracy and agreement in restraint of trade, describes the nature of the conspiracy and the results which flow therefrom. Supplemented by other paragraphs of the complaint, it states a cause of action under Section 1 of the Act. (2) Paragraphs Twelfth, Thirteenth and Forty-fourth allege a monopolistic control of the business of racing horses by defendants and their intended abuse of that monopoly to injure plaintiffs. (3) As to the question of relevant market, while the complaint is insufficiently precise on this important subject, variously referring to racing activities in New York State and in the eastern part of the United States, plaintiffs' Memorandum in support of this motion

(at p. 53) states unequivocally that "the relevant market under discussion is racing in New York State." The complaint is susceptible of such construction, and I hold that it sufficiently alleges New York State to be the relevant market. The consequence of such a holding, of course, is that the plaintiffs shall be limited, insofar as proof of relevant market is concerned, to New York State.

In addition to claiming that defendants have failed to overcome the deficiencies noted by Judge MacMahon, plaintiffs mount a variety of attacks against the complaint. I turn to these.

### 1. *Standing*

Although none of the notices of motion specifies an application to dismiss the complaint for lack of standing, defendants NYRA, Jockey Club, and the individual defendants attack the complaint on that basis. Relying on such cases as Tepler v. Frick, 204 F.2d 506 (2d Cir. 1953), and SCM Corporation v. Radio Corporation of America, 407 F.2d 166 (2d Cir. 1969), cert. den. 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461 (1969), they claim that plaintiffs here have no standing to sue since "Congress properly bestowed the right to sue only on such persons as might be injured in their business or property by reason of anything forbidden in the antitrust law," *SCM Corp.*, supra, 407 F.2d at 171, and that the complaint does not establish that plaintiffs have been injured by reason of any such violation.

However, reliance on *Tepler* and *SCM Corp.* is misplaced. In *Tepler*, the court held that there must be a proximate causal relation between the antitrust violations alleged and the damages suffered. In *SCM Corp.* the court ruled that there could be no such proximate cause where the activities of the defendant were "not directed at" the plaintiff. *Id.*, at 169. In the present case the complaint, however complex, certainly alleges that the actions of defendants were directed at the plaintiffs. For ex-

ample, although it is true, as stated in the Memorandum of NYRA, Jockey Club, et al, that the amended complaint does not allege in haec verba that defendants were obligated to provide stall space on an equal basis to all horse owners, or that plaintiffs were denied stall space or prevented from entering their horses, paragraph Forty-fourth-A does allege the necessity for stall space in order to race, and that "defendants have unfairly favored themselves in their activities as horsemen at the expense of other horse owners in such allocation and have exempted and excepted themselves from the procedures governing the allocation and use of stalls which are enforced *against plaintiffs* and other horsemen." (Emphasis added.) Such an allegation appears to meet the requirements both of the statutory provision conferring standing, 15 U.S.C. § 15, and the interpretations of the statute in such cases as *Tepler* and *SCM Corp.*

■ NYRA, Jockey Club, et al, further contend as to standing to sue in their Memorandum (pp. 17–18) that "[i]n order to maintain a private treble damage action, * * * the plaintiff must allege and prove that he has suffered an injury in his business or property, and that such injury was proximately caused by violations of the antitrust laws." Of course, on a motion to dismiss for insufficiency of the complaint the plaintiff is not required to *prove* his injury in the allegations of the complaint, and, although, as in United States v. Employing Plasterers' Ass'n of Chicago, supra, 347 U.S. at 189, 74 S.Ct. at 454, the complaint "may be too long and too detailed in view of the modern practice looking to simplicity and reasonable brevity in pleading," it does include the essential allegations of injury to the plaintiffs by the defendants in concert necessary to confer standing on the plaintiffs. This conclusion is supported by the most recent pronouncement of the Supreme Court on the subject of standing in Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L. Ed.2d 184 (1970). While the plaintiff there sued as a "grievant" under the Administrative Procedure Act, and not as a litigant under the Sherman Act, the Court laid emphasis on the fact that the proceeding was "a *competitor's* suit" (p. 152, 90 S.Ct. 827) (emphasis in original), as in the case here. The test for standing was described as " * * * whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question" (p. 153, 90 S.Ct. p. 830). Further on, the Court observed: "Certainly he who is 'likely to be financially' injured, FCC v. Sanders Bros. Radio Station, 309 U.S. 470, 477 [60 S.Ct. 693, at 698, 84 L.Ed. 869,] may be a reliable private attorney general to litigate the issues of the public interest[2] in the present case." (p. 154, 90 S.Ct. p. 830).

### 2. *Causes of action against NYRA, Jockey Club and individual defendants*

■ NYRA, Jockey Club, and the individual defendants argue that, even if the amended complaint cures the technical deficiencies of the original, it nevertheless fails to state causes of action under §§ 1 and 2 of the Sherman Act against them. Under a fair reading of the complaint, however, such a conclusion is not warranted. For example, these defendants assert (p. 27 of their Memorandum) that there is no allega-

---

2. This case, of course, affects the public interest not only because of the public's substantial participation in racing activities, but also, as Judge Mac-Mahon's opinion states, because the lawsuit "will involve the question of whether the restraints imposed were the product of state legislation or private action, a hitherto relatively undeveloped area requiring a balancing of the policies of federalism and free competition."

tion that the conduct of the Jockey Club is unlawful, yet paragraph Forty-fourth of the amended complaint specifically alleges that the activities of the defendants are "in violation of the anti-trust laws of the United States." While such an allegation is conclusory, it is surely an allegation that the conduct is "unlawful," a term which is equally conclusory. In any event, conclusory allegations [3] meet the requirements of the Federal Rules of Civil Procedure if they give fair notice of the charge, as they do here. Again, defendant Jockey Club asserts (p. 27 of Memorandum) that the complaint fails to state that Jockey Club has acted "in concert with any other person or in furtherance of any conspiracy," yet paragraph Forty-fourth alleges that "for a period of over 10 years up to and including the present, defendants have entered into and engaged in a conspiracy. * * *" Supplemented by other portions of the complaint, as they of course must be, the allegations of unlawfulness and concerted action certainly notify the defendants of the claims asserted.

In general, these observations apply also to the assertion by these defendants that the actions of racing officials, access to breeding facilities, discrimination in the allotment of stall spaces, and purse distribution are not alleged to be unlawful or connected with a conspiracy. While, beyond the pleading stage, the precise part which such alleged activities of the defendants played in the conspiracy and in producing injury to any of the plaintiffs must be demonstrated, nevertheless, read reasonably, the amended complaint does connect such activities with an allegedly unlawful conspiracy directed by the defendants at the plaintiffs, as well as possession of monopoly power, intentionally used in such a manner as to injure plaintiffs.

### 3. *The effect of state legislation*

■ The basic powers of the New York Racing Association and the Jockey Club are conferred by Title 21, § 7901 ff of the Unconsolidated Laws of New York, which governs the conduct of racing in the state. NYRA, Jockey Club, and the individual defendants claim that "plaintiffs' basic complaint is that the trustees of the Racing Association are permitted by the New York State Legislature to own and race horses in competition with non-trustee horse owners." (p. 39 of Memorandum of NYRA, Jockey Club, et al). Defendants then conclude that their conduct does not violate the federal antitrust laws since it is done pursuant to valid state legislation. The flaw in the argument is that it is based on a false assumption. Although these defendants may characterize the plaintiffs' "basic complaint" as an aversion to the New York legislation, we are not dealing here with plaintiffs' "basic complaint" (which is a mental conception), but with an actual pleading: the amended complaint. The only references to the laws of the State of New York in the amended complaint are contained in paragraphs Fourth, Fifth and Eighth describing, respectively, the corporate existence of NYRA, Jockey Club and Thoroughbred. The complaint contains not the slightest allusion to Title 21. Indeed, the very absence of allegations relating to Title 21 of the Unconsolidated Laws of New York is criticized elsewhere in the NYRA, Jockey Club, et al Memorandum, which states: "What the amended complaint does not say is that the matter of appointment of stewards and the power of such stewards are prescribed by the laws of the State of New York." (p. 28). Whether or not the racing *cognoscenti* are correct in their belief that plaintiffs' aim is to alter the law of the state (which plaintiffs have

---

3. "Under this 'notice' theory of pleading it is immaterial whether a pleading states 'conclusions' or 'facts' as long as fair notice is given, and the statement of claim is short and plain. The courts have generally so held." 2A Moore's Federal Practice (2d ed.), ¶ 8.13, p. 1698.

unsuccessfully attempted to do through the legislature of New York), the complaint here is adequate because it does not assail the existence of legally conferred powers, but the concertedly unlawful use of such powers by defendants with the alleged intention and result of injuring the plaintiffs.

### 4. Causes of action against Record and Thoroughbred

The allegations against Record and Thoroughbred are of necessity distinct from the claims against the other defendants, and must be separately measured.

The sole significant allegations relating to the publisher-defendants are found in paragraphs Eighth through Tenth, inclusive, and paragraph Forty-fourth-F. Paragraph Eighth (relating to Thoroughbred's publication *The Blood Horse*) and paragraph Ninth (relating to Record's publication *The Thoroughbred Record*) are substantially identical. The burden of their allegations is that each publication "has substantial influence upon the conduct of racing" through its "articles, editorials and comments" which "affect the value of horses, their desirability to racetracks and their racing opportunities." Paragraph Tenth informs us that the two publications are "the only nation-wide publications of this nature and there are no others of similar scope, circulation and influence upon the sport of racing in the United States." These descriptive paragraphs are supplemented by a claim (paragraph Forty-fourth-F) that "[t]he defendants have used *The Blood Horse* and *The Thoroughbred Record* * * * in furtherance of the conspiracy, as apologists and propagandists for the defendants, to promote and support defendants and their objectives, to help achieve their acceptance and to attack all those who oppose them; and also, to promote and enhance the reputations and desirability of their horses in relation to those of plaintiffs and other horsemen."

Before determining whether these assertions state a claim upon which relief can be granted it is worth noting what is not alleged. No claim is made by the plaintiffs that the publications attempt to monopolize or restrain dissemination of news, information or opinions about horse racing, that the plaintiffs are not free to compete with the publications, or that the publications have disseminated false or malicious information relating to any of the plaintiffs. Absent such allegations it is clear that under ordinary circumstances the defendants are free under the First Amendment to publish such material and editorial opinion as they choose. Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); Mills v. Alabama, 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966).

The fatal defect of the claims against the publisher-defendants is that the amended complaint does not allege facts demonstrating any causal relationship between the contents of the publications and the injuries which plaintiffs claim to have suffered, that is, stall allocations, purse distribution, programming and conditioning of races, unduly large purses at the Saratoga meeting, and access to breeding facilities. No showing has been made that either of the publishers controls such factors or that anything that either has done has resulted in injuries to the plaintiffs.

Nor do the allegations that many of the individual defendants are trustees, directors or officers of one or more of the publisher-defendants save the day for plaintiffs' claims against the publications. Whatever added strength such assertions may lend to the case against the individual defendants, they are insufficient to state a claim against the publishers. Nowhere is it alleged that any of the individual defendants performed acts in his capacity as a director, trustee or officer of either publication. Indeed, the burden of the complaint is that the individuals who alleg-

edly controlled racing in New York acted for their own personal profit. The allegations as to interlocking relationships are inadequate to establish a claim of conspiratorial liability against the publications themselves. Roofire Alarm Co. v. Royal Indemnity Co., 202 F.Supp. 166 (E.D.Tenn.1962), affirmed 313 F.2d 635 (6th Cir. 1963) cert. den. 373 U.S. 949, 83 S.Ct. 1678, 10 L.Ed.2d 704 (1963); Unionvale Sales, Ltd. v. World-Wide Volkswagen Corp., 1967 Trade Cases, para. 72,288 at p. 84,689 (S.D.N.Y.1967).

In sum, the complaint fails to state a claim against the publisher-defendants.

For the reasons stated above the motions of The New York Racing Association, Inc., the Jockey Club and the individual defendants to dismiss the complaint are denied; the motions of Record Publishing Company, Inc. and Thoroughbred Owners & Breeders Association, Inc. to dismiss the complaint as to them are granted.

It is so ordered.