**Raymond E. KARLINSKY et al., Plaintiffs-Appellants,**

v.

**The NEW YORK RACING ASSOCIATION, INC., et al., Defendants-Appellees.**

**No. 645, Docket 74–2388.**

United States Court of Appeals, Second Circuit.

Argued April 23, 1975.

Decided May 23, 1975.

---

Jesse Moss, New York City (Sue Wimmershoff-Caplan, New York City, of counsel), for plaintiffs-appellants.

David R. Hyde, New York City (Cahill, Gordon & Reindel, New York City, O. Carlysle McCandless, Ira A. Finkelstein, James Skelly Wright, Jr., New York City, of counsel), for defendants-appellees.

Before LUMBARD, HAYS and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal from a judgment on September 16, 1974 in the United States District Court for the Southern District of New York dismissing the plaintiffs' amended complaint,[1] after Hon. Whitman Knapp had conducted a four-day non-jury trial in July 1974. He made tentative oral findings of fact and conclusions at the end of the trial but permitted the plaintiffs to submit any further papers which might persuade him that their cause had merits. None were forthcoming and the judgment appealed from was thereupon entered, incorporating the oral findings and conclusions but without further opinion, which makes it necessary briefly to outline the cause before us. Brevity is dictated by the frivolity of the litigation.

The action was commenced by the Horsemen's Benevolent and Protective Association (HBPA), a Rhode Island membership corporation, and two named plaintiffs (a third plaintiff, Harry Hatcher, was dismissed as a plaintiff on motion.) The original defendants were the New York Racing Association, Inc. (NYRA),[2] the Jockey Club, the Thoroughbred Owners and Breeders Associa-

---

1. The initial complaint was filed on September 18, 1969 and charged Sections 1 and 2 Sherman Act violations as well as Robinson-Patman Act infractions. The Robinson-Patman Act claim was dismissed without leave to amend but leave to file an amended complaint incorporating the Sherman Act claim was granted by Judge MacMahon on March 20, 1970; he described the first complaint as a "meandering, disorganized, prolix narrative." A second (and longer) complaint was sustained by Judge Lasker on another motion to dismiss on March 4, 1971, although he described it as being "less than a model of the pleader's art." 52 F.R.D. 40, 44 (S.D.N.Y.1971). On March 1, 1974, plaintiffs moved for class

action status which was denied on April 26, 1974 by Judge Knapp on the ground of inexcusable delay, pursuant to Fed.R.Civ.P. 23(c)(1). In view of our affirmance here on the merits we do not reach the class action question.

2. NYRA is organized under § 7902 of the N.Y. Unconsolidated Laws (McKinney 1961), which states that "non-profit racing associations" may be incorporated "for the purpose of conducting races and race meetings, improving the racing facilities, increasing the conveniences available to patrons and serving the best interest of racing generally and improving the breed of horses."

tion, Inc., Record Publishing Company, Inc. and some 21 individual defendants, who were the President and trustees of NYRA. Eight individual defendants died between the filing of the complaint and the time of this appeal. Both the Thoroughbred Owners and Breeders Association, Inc. and Record Publishing Company, Inc. were dismissed as defendants by order below on March 23, 1971.

The plaintiff horseowners and trainers in this case have merely established that they are not contented with the way the New York State Racing Commission has conducted the business of thoroughbred horse racing in New York. Pursuant to statute[3] that Commission has delegated the operation of three New York tracks (Aqueduct, Belmont Park and Saratoga) to NYRA. Plaintiffs would change the NYRA racing program, would allocate more stable space to plaintiffs' horses instead of to those owned by NYRA trustees and Jockey Club members, and would radically alter the Saratoga summer program. While their disaffection is obvious, the plaintiffs have totally failed to establish that the conduct of the defendants constitutes a violation of the Sherman Act.

 As best we can tell, the plaintiffs' theory is that the defendants have combined or conspired to monopolize the thoroughbred racing business in the State of New York. However, the record fails to establish that the New York tracks constitute a relevant competitive market for Sherman Act purposes. See United States v. Grinnell Corp., 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). The proof indicates, on the contrary, that the same horses which race in New York also compete in other eastern states, Florida, and even abroad, depending upon the season of the year and the amount of the purses. The fact is that New York has a decided public-welfare interest in the conduct of racing and pari-mutuel betting and that defendants operate pursuant to a state regulatory scheme.[4] There is no showing whatsoever that the plaintiffs have been excluded in any way from participation in the regulated business.[5] While the plaintiffs' statistics establish that a somewhat higher percentage of horses owned by defendants are allocated track stable facilities than those owned or trained by plaintiffs, there is no showing that plaintiffs' horses are of comparable quality or possess equivalent speed credentials, or that they were precluded from obtaining such horses, or that any horsemen (including plaintiffs) were ever denied a stall unfairly.[6] There is no showing at all of any discrimination, exclusion or any competitive injury or damage. In view of their failure to establish the existence of illegal monopoly power—e. g., the power to fix prices or exclude competition as a basis for Section 2 Sherman Act liability—and perhaps conscious of their inability to establish any discrimination or exclusion, appellants in a post-argument memorandum suggest that the burden of establishing *lack* of monopoly abuse rests on

---

3. N.Y.Unconsol.Laws § 7910 (McKinney Supp. 1974–75).

4. For example, plaintiffs complain about the "lavish" 24-day racing program each *summer* at Saratoga, which allegedly is "a treat which the Jockey Club/NYRA trustees give themselves at the expense of all the other horsemen who race in this State." But such an assertion ignores the fact that New York State law *requires* 24 days of exclusive racing upstate absent an "emergency" situation. N.Y.Unconsol. Laws § 7972 (McKinney Supp.1974–75).

In addition, the total amount of purse money paid at New York tracks is determined, not by the trustees of the NYRA, but by statute. N.Y.Unconsol.Laws § 7960, subd. 2(c) (McKinney Supp.1974–75) (currently setting purses at

"three per centum of the total pools resulting from on-track regular bets and . . . four per centum of the total pools resulting from on-track exotic bets . . ..").

5. There is nothing in the record to indicate that plaintiffs have been refused permission to incorporate their own non-profit racing association under § 7902 of the N.Y.Unconsolidated Laws (McKinney 1961). See fn. 2 *supra.*

6. Judge Knapp found below that "there has never been from any witness even a suggestion that any track decision was erroneous or unfair." Plaintiff Karlinsky on cross-examination admitted that Jockey Club owners generally had better horses than average non-Jockey Club owners.

the defendants. There is, of course, no authority for this position absent initial proof of illegal monopoly. Here there is no proof even of concerted activity.

While plaintiffs also claim a Section 1 Sherman Act violation, there is no indication of any joint activity which could be classified as a restraint of trade (e. g., price fixing or refusals to deal) and no reliance on any particular case or line of cases which might be analogous to the practices claimed here to be violative of the Act.

We conclude that, absent any proof of any Sherman Act infraction, whatever dissatisfaction plaintiffs may have with the conduct of the horse racing business in New York should be directed to fora other than the federal court, whose judicial manpower has been exposed for more than five years in this case to a litany of unproven grievances masquerading as antitrust claims.

Judgment dismissing the complaint is affirmed.