**ORGANON INC. and Akzo Nobel N.V., Plaintiffs,**

v.

**MYLAN PHARMACEUTICALS, INC., Defendant.**

**Organon Inc. and Akzo Nobel N.V., Plaintiffs,**

v.

**Teva Pharmaceuticals Usa, Inc., Defendant.**

**Organon Inc. and Akzo Nobel N.V., Plaintiffs,**

v.

**Alphapharm Pty, Ltd., Defendant.**

Nos. CIV.A. 01–2171(FSH), CIV.A. 01–3835(FSH), CIV.A. 01–2682(FSH), CIV.A. 01–4246(FSH).

United States District Court, D. New Jersey.

Dec. 3, 2003.

See also 244 F.Supp.2d 370.

Nobel N.V.'s (together, "Organon") Motion to Dismiss Defendants' counterclaims for antitrust and other state law violations, pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Pursuant to Fed. R.Civ.P. 78, this Court has reviewed the submissions of the parties.

## BACKGROUND

Organon manufactures the antidepressant drug mirtazapine,[2] which was originally claimed in its now-expired United States Patent No. 4,062,848 (the " '848 patent"). Organon filed a New Drug Application ("NDA") 20–415, with the Food & Drug Administration (the "FDA") to gain approval for the use of mirtazapine for the treatment of depression, which the FDA approved on June 14, 1996. Adding its patent and regulatory exclusivities, Organon's exclusive right to manufacture and sell mirtazapine expired on June 14, 2001.

On November 2, 1999, Organon was granted United States Patent No. 5,977,-099 (the " '099 patent") for a method of treating depression using a combination of mirtazapine and a selective serotonin reuptake inhibitor ("SSRI"), such as Prozac. Organon did not submit an NDA to gain FDA approval for the combination use of mirtazapine and an SSRI for the treatment of depression. As such, use of mirtazapine in combination with an SSRI by doctors is considered an "off-label" use. In January 2001, fourteen months after being granted the '099 patent, Organon submitted the '099 patent to the FDA for listing in the Orange Book.[3]

Kevin J. McKenna, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, PC, Newark, NJ, for plaintiffs/counter–defendants.

Brian D. Romanowsky, Harwood Lloyd, LLC, Hackensack, NJ, Allyn Zissel Lite, Lite, Depalma, Greenberg and Rivas, LCC, Arnold B. Calmann, Saiber, Schlesinger, Satz & Goldstein, Esqs., Newark, NJ, for defendants/counter–claimants/movant.

## OPINION

HOCHBERG, District Judge.

This matter comes before the Court upon Plaintiffs Organon Inc.[1] and Akzo

---

1. Organon is now called Organon USA Inc.

2. Organon markets mirtazapine under the trade name Remeron.

3. The FDA publishes the APPROVED DRUG PRODUCTS WITH THERAPEUTIC EQUIVALENCE EVALUATIONS (the "Orange Book"). The FDA lists the patent numbers in the Orange Book that the NDA applicant identifies as being associated

Beginning in February 2001, several generic drug manufacturers, including the Defendants, filed Abbreviated New Drug Applications ("ANDAs") with the FDA, seeking approval for their generic version of mirtazapine. The Defendants each filed a certification, under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) (the "Paragraph IV Certifications"), which stated that the '099 patent was invalid or would not be infringed by their generic version of mirtazapine. Organon subsequently filed actions against Mylan Pharmaceuticals, Inc. ("Mylan"), Teva Pharmaceuticals USA, Inc. ("Teva"), and Alphapharm Pty Ltd. ("Alphapharm") (collectively, the "Defendants")[4], as well as other actions against several generic drug manufacturers, alleging claims of inducement to infringe the '099 patent. Organon's actions for inducement to infringe claimed that the Defendants would induce doctors and pharmacists to infringe the '099 patent by encouraging or acquiescing in the substitution of generic mirtazapine for Organon's Remeron in combination use with an SSRI to treat depression.

As Organon sued each of the Defendants within forty-five days of Organon's receipt of the Defendants' Paragraph IV Certifications, FDA approval of the Defendants' ANDAs was automatically stayed by operation of the Hatch–Waxman Act and would remain stayed until the earlier of thirty months or a judicial determination that the '099 patent was invalid or not infringed. *See* 21 U.S.C. § 355(j)(5)(B)(iii). On December 18, 2002, this Court ruled that Defendants' sale of generic mirtazapine did not induce infringement of the '099 patent. *See Organon, Inc. v. Teva Pharmaceuticals, Inc.,* 244 F.Supp.2d 370 (D.N.J.2002) ("*Organon I* "). Thus, Organon's stay of the generic drug manufacturers' ANDAs for mirtazapine lasted approximately fourteen to eighteen months.

Defendants filed counterclaims claiming that a series of actions taken by Organon violated the Sherman Act. *See* 15 U.S.C. § 1 *et seq* .. These actions include: (1) fraudulently seeking and obtaining from the Patent and Trademark Office United States Patent No. 5,977,099 ("the '099 patent"); (2) improperly listing the '099 patent in the Orange Book; and (3) baselessly initiating patent infringement actions against the generic drug manufacturers, claiming induced infringement of the '099 patent. In the instant motion, Organon has moved to dismiss Defendants' counterclaims of antitrust violation, arguing that its listing of the '099 patent in the Orange Book and its subsequent patent infringement actions against the generic drug manufacturers are protected activity under the *Noerr–Pennington* doctrine.[5]

## ANALYSIS

### I. Motion to Dismiss

██ In deciding a motion to dismiss a counterclaim under Fed.R.Civ.P. 12(b)(6), all allegations in the counterclaim must be

---

with that NDA. Listing in the Orange Book will be discussed further below.

4. Mylan and Alphapharm filed a joint memorandum of law opposing Organon's Motion to Dismiss. Teva filed a separate memorandum of law opposing Organon's motion, in which it expressly adopted almost all of Mylan and Alphapharm's arguments. When this Opinion refers to "the Defendants," it refers to a position taken by all three defendants.

5. Organon has not moved to dismiss Defendants' *Walker Process* counterclaims of fraudulently obtaining the '099 patent from the Patent & Trademark Office. *See Walker Process Equip., Inc. v. Food Machinery and Chemical Corp.,* 382 U.S. 172, 177, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965).

taken as true and viewed in the light most favorable to the counterclaimant. *See Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) *and Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.,* 140 F.3d 478, 483 (3d Cir.1998). A court may consider only the allegations plead in the counterclaim, exhibits attached to the counterclaim, matters of public record, and undisputedly authentic documents if the counterclaims are based upon those documents. *See Pension benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993). After viewing the allegations in the light most favorable to the counterclaimant, a court shall dismiss a counterclaim for failure to state a claim only if it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations." *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). This holds true especially in antitrust cases, where "the proof is largely in the hands of the alleged conspirators," and thus, plaintiffs should be given ample opportunity for discovery and dismissals should be granted sparingly. *See Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). This "liberal approach to the consideration of antitrust complaints is important because inherent in such an action is the fact that all details and specific facts relied upon cannot properly be set forth as part of the pleadings." *See Lucas Indus. v. Kendiesel, Inc.,* No. 93–4480, 1995 WL 350050 at *2 (D.N.J. June 9, 1995). Further, this Court must take "mere conclusions of the pleader" into account when deciding whether a claim for relief is stated. *Id.* at *2 (*quoting United States v. Employing Plasterers' Assn.,* 347

U.S. 186, 188, 74 S.Ct. 452, 98 L.Ed. 618 (1954)).

## II. Antitrust Claims

 The *Noerr–Pennington* doctrine protects activities by parties to influence government policy or legislation from antitrust claims. *See Eastern R.R. Presidents Conference v. Noerr Motor Freight,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) *and United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). While the doctrine nominally began as a judicially-created limitation on the scope of the Sherman Act with respect to activities by parties to petition the government to take a certain course of action beneficial to them and harmful to their competitors, it has been expanded to include litigation to protect rights such as patents. *See Professional Real Estate Investors, et. al. v. Columbia Pictures Indus., Inc., et. al.,* 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) ("*PRE*").[6]

 However, the scope of the *Noerr–Pennington* doctrine is not without limit. First, courts have held that activities in which the government entity merely plays a ministerial role, rather than making an independent determination, should not be afforded *Noerr–Pennington* immunity. *See In re Buspirone Patent Litigation,* 185 F.Supp.2d 363 (S.D.N.Y.2002) ("*Buspirone*"). Second, litigation will not be protected when a court determines that it is "sham" litigation, i.e., instituted for the sole purpose of precluding competition. *PRE,* 508 U.S. at 60–61, 113 S.Ct. 1920 (*quoting Noerr,* 365 U.S. at 144, 81 S.Ct. 523).

---

**6.** As the *Noerr–Pennington* doctrine immunizes litigation, Organon's patent infringement claims against the Defendants are immunized under *Noerr–Pennington,* subject to the "sham" litigation discussion, *infra.*

A. *Listing in the Orange Book as Petitioning Activity*

Courts have held that *Noerr–Pennington* immunity will not extend to activities that do not petition the government to make an independent decision on the merits and where the government acts in merely a ministerial fashion. *Buspirone* at 370 (listing a patent with the FDA is not petitioning activity eligible for *Noerr–Pennington* immunity because the FDA's listing of the patent in the Orange Book was ministerial and the FDA did not independently confirm that the patent listing was correct). *See also Litton Systems, Inc. v. American Telephone & Telegraph Co.*, 700 F.2d 785 (2d Cir.1983) (telephone company's filing of tariffs requiring customers to connect equipment purchased from its competitors to the telephone system only through the use of a device designed by the company was not a request for governmental action under the *Noerr–Pennington* doctrine and was immunized from antitrust liability).

In *Buspirone*, Bristol–Meyers, a pioneer drug manufacturer, argued that its listing should be regarded as petitioning activity because it was a request for the FDA to publish the information in the Orange Book. The district court, in deciding that Bristol–Myers' listing of its patent in the Orange Book was not petitioning activity for *Noerr–Pennington* purposes, distinguished "between activities in which the government acts or renders a decision only after an independent review of the merits of a petition and activities in which the government acts in a merely ministerial or non-discretionary capacity in direct reliance on the representations made by private parties." *Buspirone*, 185 F.Supp.2d at 369. The district court found that whether the patent owner submits the patent listing with the NDA or obtains the patent after filing the application, "the

FDA is required by law to publish the information in the Orange Book." *Buspirone*, 185 F.Supp.2d at 371 (*citing* 21 U.S.C. §§ 355(b)(1) & (c)(2)). *See also American Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C.Cir.2001) (FDA administers Orange Book listings in ministerial fashion); *Mylan Pharmaceuticals, Inc. v. Thompson*, 139 F.Supp.2d 1, 10–11 (D.D.C.2001) (same), *rev'd on other grounds*, 268 F.3d 1323 (Fed.Cir.2001).

In *Litton*, AT & T filed an interface tariff with the Federal Communications Commission ("FCC") requiring its customers who purchased telephone equipment from its competitors to also purchase an interface device sold by AT & T to go between the telephone equipment and AT & T's telephone network. AT & T was required by law to file the tariff with the FCC for the tariff to take effect. The FCC allowed the tariff to take effect but explained that such allowance was not to be construed as passing on the validity of the tariff. Almost ten years later and after extensive hearings on the matter, the FCC found that the tariff had been invalid when filed and set the tariff aside. *See Litton*, 700 F.2d at 794–99, 806–09. The Second Circuit affirmed a jury's findings that AT & T had violated the Sherman Act by filing the tariff because "AT & T's power to exclude ... competitors from the telephone terminal equipment market resulted not from the FCC's regulatory authority but from AT & T's exclusive control of the telephone market." *Id.* at 795. The Second Circuit held that AT & T's conduct was not "petitioning activity" for *Noerr–Pennington* purposes. *Id.*

■ This Court finds that filing a patent for listing in the Orange Book is not "petitioning activity" within the meaning of the *Noerr–Pennington* doctrine because the FDA's action in listing Organon's '099 patent in the Orange Book was not an inde-

pendent governmental determination, but rather a purely ministerial function. In accepting Organon's request to list the '099 patent, the FDA relies directly upon representations made by Organon without conducting an independent investigation into the basis for such a listing.

Organon argues that the *Noerr–Pennington* doctrine applies to its Orange Book listing because the listings are an integral part of the Hatch–Waxman dispute resolution process. In particular, Organon contends that its listing of the '099 patent is intertwined with its subsequent patent infringement suits and, therefore, constitutes petitioning activity and should be accorded *Noerr–Pennington* immunity. Orange Book listing activity, however, is distinct from the filing of the patent infringement suits. Listing simply provides Organon with a number of additional benefits under the Hatch–Waxman Amendments, including: (1) the right to receive notice of any ANDA from applicants who sought FDA approval of a generic form of mirtazapine and who filed a Paragraph IV certification with regard to the '099 patent; (2) a forty-five day grace period to bring a patent infringement suit; and (3) upon the filing of a patent infringement suit, an automatic stay of up to thirty months of the FDA's approval of the ANDA. *Buspirone*, 185 F.Supp.2d at 372. If Organon had decided not to list the '099 patent, it could still have brought a patent infringement suit against the generic manufacturers, even though it would have lost the benefits of listing in the Orange Book. The listing *per se* did not affect the merits of the patent infringement suit, and the FDA, acting in a purely ministerial capacity, had no role in the outcome of the Hatch–Waxman dispute resolution process.

■ The Defendants argue that Organon's listing was improper because the FDA's regulation does not permit the sub-

mission of a method-of-use patent for listing in the Orange Book where the use has not been approved by the FDA, i.e., an "off-label" use. The Defendants further allege that Organon, by knowingly submitting an improper listing of the '099 patent to benefit from the thirty-month automatic stay of the FDA's approval of their ANDAs, effectively employed the statutory process in bad faith to extend its control over the mirtazapine market, thereby perpetuating a monopoly in violation of the Sherman Act.

This Court finds that, even though Organon's submission of the '099 patent to the FDA for listing in the Orange Book was not petitioning activity for *Noerr–Pennington* purposes, the then existing statute and regulation, 21 U.S.C. §§ 355(b)(1) & (c)(2) and 21 C.F.R. § 314.53(b), gave Organon a reasonable basis for listing in the Orange Book. Section 355(b)(1) provides:

> The applicant shall file with the [NDA] the patent number and expiration date of *any* patent which claims the drug for which the applicant submitted the application *or which claims a method of using such drug* and with respect to which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engages in manufacture, use or sale of the drug.

21 U.S.C. § 355(b)(1) (emphasis added).

Section 355(c)(2) states that:

> If the patent information described in subsection (b) of this section could not be filed with the submission of an application under subsection (b) of this section . . ., the holder of an approved application shall file with the Secretary the patent number and the expiration date of *any* patent which claims the drug for which the application was submitted or *which claims a method of using such drug* and with respect to which a claim of patent infringement could reasonably

be asserted if a person not licensed by the owner engaged in the manufacture, use, or sale of the drug.

21 U.S.C. § 355(c)(2) (emphasis added). The plain language of 21 U.S.C. §§ 355(b)(1) & (c)(2) can be read to have permitted Organon to submit for listing in the Orange Book the '099 patent as "any patent ... which claims a method of using such drug."

Section 314.53(b) of the FDA regulation that implements the patent listing provision states that "[f]or patents that claim a method of use, the applicant shall submit information only on those patents that claim indications or *other conditions of use* of a pending or approved application." *See* 21 C.F.R. 314.53(b) (emphasis added). This section is capable of two equally plausible interpretations.[7] It could have been read to mean that only method-of-use patents claiming FDA-approved uses may be submitted for listing. On the other hand, it is equally reasonable for Organon to have read Section 314.53(b) to require the listing of the patents that claim "other conditions of use" for a drug that is the subject of a NDA or an approved NDA. Organon's reading would not have been inconsistent with the broad language of 21 U.S.C. §§ 355(b)(1) & (c)(2).[8] This Court finds that given the statutory and regula-

tory language at the time it submitted the '099 patent for listing in the Orange Book, Organon had a reasonable basis for the submission, and therefore, Organon's listing was not improper.

### B. *Patent Infringement Action as "Sham" Litigation*

■ To fall outside *Noerr–Pennington* immunity, an antitrust defendant's lawsuit must satisfy a two-step definition of "sham" litigation: (1) the lawsuit must be objectively baseless; and (2) the objectively baseless lawsuit was the result of the litigant's subjective motivation to interfere directly with the business relationships of a competitor through the use of the governmental process, as opposed to the outcome of that process. *PRE*, 508 U.S. at 60–61, 113 S.Ct. 1920 (*citing Noerr*, 365 U.S. at 144, 81 S.Ct. 523 and *Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991)).

To satisfy the first prong of the "sham" litigation test, a court must find the lawsuit in question to be objectively baseless "in the sense that no reasonable litigant could realistically expect success on the merits." *PRE*, 508 U.S. at 60, 113 S.Ct. 1920. The first part of the test calls for an objective determination. If a court finds

---

**7.** In *Allergan, Inc. v. Alcon Laboratories*, 324 F.3d 1322 (Fed.Cir.2003), although the *per curiam* opinion does not address § 314.53, nor does it address the antitrust implications stemming from the Orange Book listing of a non-approved use of a patented drug, it is in the concurring opinion that § 314.53 is mentioned. Judge Schall, in his concurring opinion, concluded that it is proper, indeed required, for a patent holder to submit for listing in the Orange Book non-approved uses of its patented drug. *Id.* at 1338–40 (Schall, J., concurring).

**8.** The FDA tacitly acknowledged the ambiguity of Section 314.53(b)'s language when it proposed on October 24, 2002 to amend 21

C.F.R. § 314.53(b). *See Applications for FDA Approval to Market a New Drug: Patent Listing Requirements and Application of 30-Month Stays on Approval of Abbreviated New Drug Applications Certifying That a Patent Claiming a Drug Is Invalid or Will No be Infringed*, 67 Fed.Reg. 65,448 (proposed October 24, 2002). Under the proposed rule, the improved § 314.53(b) would read as follows: "For patents that claim a method of use, the [NDA] applicant shall submit information only on those patents that claim indications or other conditions of use that are the subject of a pending or approved application." 67 Fed.Reg. at 65,451.

that the litigant could conclude that the lawsuit was reasonably calculated to result in a favorable outcome, the lawsuit is immunized under *Noerr*, and an antitrust claim premised on the "sham" exception must fail. *Id.* In other words, to qualify as "sham" litigation, the lawsuit "must constitute the pursuit of claims so baseless that no reasonable litigant could realistically expect to secure favorable relief." *Id.* at 62, 113 S.Ct. 1920. In applying the first objective prong of the "sham" litigation test, the Supreme Court in *PRE* cautioned that, where the lawsuit was ultimately unsuccessful, courts should resist the temptation to engage in *post hoc* reasoning by concluding that the unsuccessful lawsuit must not have been unreasonable or without foundation. *Id.* at 60, 113 S.Ct. 1920 (*citing Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)).

Only if the litigation is found to be objectively baseless may a court proceed to examine the litigant's subjective motivation. *PRE*, 508 U.S. at 60, 113 S.Ct. 1920. Under this two-pronged "sham" litigation test, the burden is on the antitrust plaintiff "to disprove the challenged lawsuit's *legal* viability." *Id.* at 61, 113 S.Ct. 1920. Even if the antitrust plaintiff succeeds on demonstrating both the objective and subjective components of a sham, the plaintiff must still prove a substantive antitrust violation. *Id.*

▮▮▮ This Court finds that at the time it submitted the '099 patent, Organon had an objective basis to believe it could assert a claim of patent infringement with a reasonable calculation of a favorable outcome. At the time, three district courts had denied pre-trial motions in similar cases where a patent holder sued ANDA filers for inducement to infringe. *See Warner–*

*Lambert Co. v. Apotex Corp.*, No. 98 C 4293, 1999 WL 259946 (N.D.Ill. Apr. 8, 1999) (denying generic manufacturer's summary judgment motion because patentee has raised genuine issue of material fact as to whether generic manufacturer will induce infringement, based on the following facts: 1) doctors and pharmacists routinely substitute generic drugs for brand name drugs for all indications for which the drug is used; 2) more than 75% of the prescriptions written are for the "off-label," patented use; and 3) the brand name drug has been shown to be particularly useful in its "off-label" use); *Warner–Lambert Co. v. Purepac Pharmaceutical Co.*, No. 98–2749 (D.N.J. Aug. 25, 1999); *In re Omeprazole Patent Litigation*, MDL Docket No. 1291, M 21–81, 2001 WL 34077873 (S.D.N.Y. July 6, 2001) (collectively, the "Trilogy").

Organon's allegations in its patent infringement claims were similar to those alleged in the Trilogy. While those cases were pending, Organon in good faith proceeded with its own patent infringement actions based upon an objectively reasonable belief that it might have obtained a favorable outcome. When this Court granted summary judgment in December 2002 for the generic manufacturers and against Organon on its claim that the generic manufacturers' sale of mirtazapine would induce infringement of the '099 patent, it was the first court to do so. On January 15, 2003, one month after this Court had issued its ruling against Organon in *Organon I*, the Federal Circuit issued its decision in *Warner–Lambert Co. v. Apotex Corp.*, 316 F.3d 1348 (Fed.Cir. 2003), which holds that the Hatch–Waxman Act does not permit an action for induced infringement with the fact patterns mirroring those in the patent infringement action filed by Organon against

the generic manufacturers in *Organon I*.[9] Until the *Apotex* ruling, however, Organon had no objective basis to know that its patent infringement action was wholly lacking in merits. In light of the uncertain state of the law at the time with regard to induced infringement claims, this Court cannot find that Organon lacked an objectively reasonable basis to proceed with its claims against the generic manufacturers; thus, its patent infringement litigation, although unsuccessful, was entitled to *Noerr–Pennington* immunity.[10] Accordingly, this Court finds that Organon's patent infringement lawsuits do not fit the "sham" litigation exception for *Noerr–Pennington* purposes.

### C. *State Law Claims*

Organon argues that Defendants' state law claims should be dismissed as the immunity provided by *Noerr–Pennington* doctrine applies with the same force to the Defendants' counterclaims based on state common law. *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128 (3d Cir. 1999). However, as there are remaining claims against Organon, including Defendants' *Walker Process* counterclaims, this Court will reserve its judgment as to whether to exercise supplemental jurisdiction over the state law claims until this Court knows whether any federal claims will be tried.

This Court has reviewed the allegations in the light most favorable to the Defendants, and for the stated reasons, this Court grants Organon's Motion to Dismiss Defendants' federal antitrust counterclaims, with the exception of Defendants'

*Walker Process* claims for fraud on the Patent and Trademark Office.

An appropriate order will issue.

---

**9.** The *Apotex* ruling was later reaffirmed in *Allergan*.

**10.** As this Court finds that Organon had an objective basis for its patent infringement actions, it does not reach the second prong of the "sham" litigation test.